**In the Matter of BOSTON AND MAINE CORPORATION, Debtor.**

**Bankruptcy No. 70–250–M.**

United States District Court, D. Massachusetts.

Oct. 14, 1984.

See also, D.C., 46 B.R. 965; D.C., 46 B.R. 966; D.C., 46 B.R. 974; D.C., 46 B.R. 987, and D.C., 46 B.R. 990.

William S. Green, Sheehan, Phinney, Bass & Green, Manchester, N.H., for petitioner.

## MEMORANDUM

PETITION OF SHEEHAN, PHINNEY, BASS & GREEN FOR FINAL ALLOWANCE OF COMPENSATION AND DISBURSEMENTS INCURRED AS SPECIAL COUNSEL TO DEBTOR'S TRUSTEES IN RE PROCEEDINGS IN EMINENT DOMAIN BEFORE NEW HAMPSHIRE EMINENT DOMAIN COMMISSION, March 1, 1979 through November 30, 1980

FRANK J. MURRAY, Senior District Judge.

The petition of the law firm of Sheehan, Phinney, Bass & Green (the "Petitioner") of Manchester, New Hampshire, for allowance of final compensation in the amount of $232,310.00 out of the Debtor's estate for legal services rendered in an eminent domain proceeding, and expenses incurred in the amount of $2656.88, for the period March 1, 1979 through November 30, 1980, came on to be heard by the court after due notice to creditors and other parties in interest. The Interstate Commerce Commission, pursuant to 11 U.S.C. § 205(c)(2), has fixed the maximum limits within which allowance may be made and has filed its decision with the court. Creditors and other parties in interest were afforded the opportunity to be heard at the hearing. Absence of formal objection by creditors does not relieve the court of its responsibility to scrutinize closely the details of the petition to ensure that the allowance does not exceed permissible limits.

Petitioner was hired as special counsel by Debtor's trustees, pursuant to Order No. 105, to represent the trustees in the proceedings in the State of New Hampshire (the "State") to determine the award of damages for the taking of Debtor's property by the State by exercise of the power of eminent domain. The State made a tender deposit to the Debtor in the amount of $1.0 million in full satisfaction of the damages resulting from the taking. The Debtor did not accept the tender. After negotiations, wherein the State offered to compromise in the amount of $1,625,000, the Debtor instituted proceedings before the New Hampshire Eminent Domain Commission (the "Commission") seeking compensation for the taking of its property. After hearing, the Commission awarded the Debtor $2,328,000.00, and the sum of $100,000 (less an amount to be awarded another landowner).

Petitioner assigned four attorneys, namely, Messrs. Green, Rudman, Harvell and Haffer, to represent the Debtor's trustees in the eminent domain proceedings. A total of 463 hours was expended by these four attorneys in rendering necessary services in behalf of the Debtor. The hourly rates of compensation of the four attorneys ranged from $45 to $150. Petitioner's claim for compensation for the legal services of the attorneys may be summarized as follows:

For legal services rendered to trustees of the Boston and Maine Corporation, Debtor:

| | | |
|---|---|---|
| a. | 463 hours of services | $ 33,110.00 |
| b. | Contingent fee (15%) | 199,200.00 |
| c. | Total compensation | $232,310.00 |

The property taken consisted of approximately 78 miles of right of way and track structures, and additional parcels of land adjacent to the right of way. The railroad line was not operating, and was the subject of an abandonment petition in this court. Debtor had unchallenged fee simple title to 80–90 percent of the real estate taken by the State, the remainder of the land taken was claimed by others. A title examination did not set at rest the claimants' insistence of ownership of the fee. In behalf of Debtor, Petitioner negotiated with the State and claimants and secured a stipulation that the Commission would consider Debtor's interest as a fee simple interest for the entire line for purposes of valuation of the land taken and the damages to be awarded.

At the hearing before the Commission, Petitioner was confronted by statements made in the abandonment proceedings in this court by Debtor's Chief Engineer of the salvage value of track and bridges, and value of the land on 72 miles of right of way. The land was stated as having the value of $443,400.00; the net salvage value of the bridges was stated as $511,653; the total at $955,053. These statements, and the testimony given in the abandonment proceedings by Debtor's witnesses, were in evidence before the Commission. Such evidence differed substantially from the testimony of the expert introduced by Petitioner at the hearing.

The 463 hours of services rendered by Petitioner included preparation for hearing before the Commission, obtaining a deposition of a state officer in the New Hampshire Transportation Authority, correspondence and conferences with other counsel, preparation and interviews with witnesses, negotiation of the stipulation concerning title of Debtor, negotiation of an agreement concerning the Loch Haven dispute, and three weeks of trial before the Commission.

The quality of Petitioner's services was high, and a good result was obtained in light of the title dispute and the dampening effect of the valuation testimony given by Debtor's employees in the abandonment proceedings.

For all its efforts, Petitioner seeks a total award of compensation of $232,310.00. This amount is equivalent to an hourly rate of $501.75 for the 463 hours expended. The $199,200.00 (the contingent fee, so called), is more than six (6) times $33,110.00 (item a. on the fee table on page 985 of this Memorandum). An allowance of fees for legal services based on multiples of hourly rates of that magnitude is unheard of in railroad reorganization proceedings.

*In the Matter of Penn Central Transportation Company, Debtor,* 23 B.R. 499, 512 (E.D.Pa.1982) (Opinion of Fullam, J.). An allowance of such proportion would ignore the purposes of bankruptcy reorganization proceedings: they are primarily for the benefit of creditors.

The statutory provision governing allowance of compensation to special counsel for Debtor's trustees, and applicable in this proceeding, is 11 U.S.C. § 205(c)(2), which provides for reasonable compensation. The average hourly rates of the services of the four attorneys, based on the range of their individual rates of $45 to $150, is $71.51. No question was raised at any stage of this petition for compensation that this range of hourly rates was not fair and reasonable. At the hearing, Petitioner through William Green, Esquire, argued that the contingent fee of $199,200.00 is equivalent to 15% of $1,328,000.00, the difference between the tender deposit and the Commission's award of $2,328,000.00; that the contingent fee was based on the prevailing practice in New Hampshire; and that the trustees' general counsel was advised of that practice when Petitioner was employed. The response of trustees' general counsel was that Petitioner was informed that special counsel's compensation was subject to the approval of the reorganization court. In the nature of the reorganization, the court cannot be bound by arrangements, if any there were, made by trustees' general counsel with reference to special counsel's fees. The fees are subject to the supervisory power of the court. *Cf. In re J.M. Wells, Inc.,* 575 F.2d 329, 331 (1st Cir.1978).

Generally, the starting point in determining reasonable compensation for legal services is the "lodestar" approach: appraisal of the number of hours reasonably expended, and evaluation of such hours of services by reasonable hourly rates. The result produced provides a base, and the court may, in its discretion, adjust the result upward or downward, when in its judgment the circumstances make it appropriate. The burden is on the applicant for compensation to prove justification of upward adjustment. *See Blum v. Stenson,* — U.S. —, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

In this matter, Petitioner's undertaking to represent Debtor did not require the firm, or any of its attorneys, to assume the risk of not receiving compensation for services rendered. The measure of compensation was reasonable. A reasonable fee derives from considerations of time spent, difficulty of the problems encountered, size and condition of the bankrupt estate, opposition met, and results achieved. Such considerations may be properly reflected in the determination of reasonable compensation. Special counsel is an officer of the court and his compensation is not as in the private sector. Compensation based on the concept of sharing in a common fund with creditors has no place in bankruptcy reorganization proceedings.

Petitioner deserves credit for the imaginative response to the challenge presented with respect to title to the right of way. If that challenge had not been met, the persuasive character of testimony on the theory of valuation of the real estate might have been impaired. The court was never informed, however, whether the challenged parcels were adjacent to one another, or were located at either end of the termini, or were interspersed throughout the right of way. That information could have been important as a measure of difficulty, if any, of Petitioner's task. Nor was the court informed as to the disparity between the evidence presented at the abandonment proceedings and the testimony of Petitioner's expert given to the Commission. That information likewise could have been important.

In consideration of the entire record on the petition for compensation in the eminent domain proceedings, it is the court's judgment that a fair and reasonable allowance for the services rendered is $80,000.00. Petitioner seeks allowance of expenses of $2656.88 comprised of these items: secretarial services—$767.00, Westlaw services—$105, and other items totalling $1784.88. The court allows all of the

items except secretarial services ($767.00), which item the court considers is properly subsumed in normal overhead.

An order shall enter allowing Petitioner $80,000.00 for compensation and $1889.88 for reimbursement of expenses.