**In the Matter of 437 PARK CORPORA-TION, d/b/a Karakas Gourmet Deli and Catering, Debtor.**

**Bankruptcy No. 84 B 11476 (PBA).**

United States Bankruptcy Court, S.D. New York.

Oct. 10, 1985.

Gainsburg, Gottlieb, Levitan, Greene & Cole, New York City, for Ira S. Greene, trustee.

### MEMORANDUM DECISION AND ORDER RE: ATTORNEYS' FEES

PRUDENCE B. ABRAM, Bankruptcy Judge:

This now converted Chapter 11 case was filed on October 18, 1984. By application

dated January 18, 1985, the U.S. Trustee sought an order from this court directing, *inter alia,* Owens & Associates, P.C. ("Owens") to return the fees paid to Owens in connection with this case because of the failure of Owens to file an affidavit pursuant to Bankruptcy Rule 2016(b), the lack of any order of retention for Owens, the lack of bankruptcy expertise of Owens and the dilatory prosecution of the case.[1] The court fixed a hearing by order to show cause on this application for February 25, 1985. At a hearing held on January 30, 1985,[2] Paulette Owens, Esq., stated that Owens had received $2,300 from the Debtor in connection with this case. At the scheduled February 25 hearing, this court granted the motion of the U.S. Trustee directing the return of the monies paid to Owens on the grounds that the legal theories put forward by Owens did not take account of the provisions of the Bankruptcy Code and further that the theories were not pursued in an effective or efficient manner in order to preserve whatever rights Owens' clients might have had. No one on behalf of Owens appeared at the February 25 hearing.

■ An order embodying the court's February 25 ruling and directing Owens to turn over $2,300 to the Chapter 7 Trustee was noticed by the U.S. Trustee for settlement on March 4, 1985. Before the order was signed and on March 8, 1985, Owens objected to the order and stated that the failure to appear at the February 25 hearing was a result of a misunderstanding that the matter had been dealt with at the hearing held on January 30. By order dated March 8, 1985, the court directed that it would hold a further hearing in the matter on April 1 provided that Owens filed a detailed fee application on or before March 22. A further document was filed by Owens and docketed on March 25, 1985 (the "March 25 Document") that states Owens expended 57.5 hours at the rate of $125 per hour for a total fee due of $7,187.50 in connection with this case. The March 25 Document does not comport with the requirements for a fee application as it does not contain any information on the date the services were rendered or the name of the person rendering particular services. See Bankruptcy Rule 2016 and *In re Hudson & Manhattan Railroad Co.,* 339 F.2d 114 (1964).

A lack of attention to detail and to the requirements of the Bankruptcy Code and Rules has pervaded this case from the very beginning. The caption on the petition itself was unclear as to whether the petition was a joint filing by a husband and wife or a filing by a corporation, or perhaps both.[3] The court brought this to Owens' attention by letter dated November 7, 1984 and directed corrective action within 15 days. No action was taken within the time stated. An application was thereafter filed on November 29 [4] which resulted in an order dated December 11, 1984 amending the cap-

---

1. The U.S. Trustee's application also sought conversion of the case to Chapter 7.

2. The January 30, 1985 hearing was on the motion of the landlord, Vicham Real Estate Corp. ("Vicham"), for conversion of the case to Chapter 7 and for termination of the lease for the premises pursuant to Bankruptcy Code § 365(d)(4). The lease for the premises, utilized by the debtor for a delicatessan grocery and coffee shop, is dated May 10, 1983 and is between Vicham as landlord and Mr. Suleyman and Mrs. Ayse Karakas and 437 Park Corporation, as tenants, with all three jointly and severally liable. The lease was for a term of ten years expiring June 30, 1993, with the rent escalating every other year. For the first two years, the rent was $5,000 per month. The landlord had also filed an earlier motion on December 7,

1984 seeking delivery of possession of the premises because of the failure to pay rent of $14,503 due for the period August to October 1984. A hearing had been held on December 19, 1984 on that motion at which time the court had directed payment of $2,000 per month.

3. The caption on the petition filed on October 18, 1984 reads "In re Suleyman Karakas and Ayse Karakas, Karakas Gourmet Deli and Catering 437 Park Corporation, Soc.Sec.No. 124–56–1355, 125–56–0495."

4. The application for the caption amendment, which is 1 page in length, states "This application is necessary because at the time that the petition and schedules were filed, the Debtor's legal status was unknown. The Debtor's corporate existence has now been confirmed."

tion to "437 Park Corporation d/b/a Karakas Gourmet Deli and Catering."

Owens failed to become aware of the amendments made to Code § 365 by the Bankruptcy Amendments and Federal Judgeship Act of 1984 and their applicability to this case. As a result, Owens failed to obtain an order within 60 days of the filing of the case extending the time to assume or reject the lease for the Debtor's sole premises. Code § 365(d)(4) states that if such an extension is not obtained within the sixty-day period, a lease shall be deemed rejected. In addition, Owens failed to understand the provisions of Code § 365(d)(3), as amended, that mandate that the court compel the debtor to pay post-petition the rent reserved in the lease as a condition of continuing in possession. As to this latter point, the court itself failed to properly appreciate the impact of this change at a hearing held on December 19, 1984 on the landlord's application for the possession of the premises. However, after that hearing, and not less than a week in advance of the adjourned hearing held on January 30, 1985, the landlord submitted motion papers that explicitly brought out the court's error. Yet that did not cause Owens to undertake a review of the amendments to Code § 365.

On December 6, 1984, and in opposition to the Landlord's original motion, Owens submitted an affirmation in opposition that stated that the rent being charged by the landlord was unconscionable and exorbitant. The affirmation stated that the lease should be reformed in the interest of justice. It was alleged that the rent was three times that for adjoining premises, that the landlord took advantage of the debtor's lack of knowledge of English [5] and unfamiliarity with the business community, that the landlord demanded a three-month deposit "in violation of commercial leasing regulations," and that the landlord had knowingly rented the premises without gas and electricity. The affidavit concluded

"WHEREFORE, plaintiff requests that the information presented be taken in a light more favorable to the tenants giving said tenants an opportunity to protect the debtor's rights."

No legal authorities were cited. Nor did the "wherefore" clause seek any specific relief modifying or amending the lease.

It became apparent at the January 30 hearing that Paulette Owens did not understand the distinctions among the bankruptcy case, an adversary proceeding and a contested matter.[6] As a result, Ms. Owens failed to appreciate that the previously filed affirmation in opposition could not support, procedurally, an affirmative award in the Debtor's favor either to modify the lease or award damages even if it had requested such relief. In addition, she evidenced no appreciation of the fact that Code § 365, both before and after the 1984 amendments, requires the curing of all arrears upon assumption of a lease, and that the Debtor would therefore have to pay the total amount due under the terms of the lease upon assumption. Ms. Owens repeatedly declined at the January 30 hearing to state whether the Debtor could pay the post-petition arrears at even the $2,000 rental fixed by the court on December 19. The U.S. Trustee attempted to call Mr. Suleyman Karakas to the stand but Ms. Owens refused to allow an associate of her office to translate for him.

At the conclusion of the lengthy January 30 hearing, the court fixed certain dates by which all post-petition arrears were to be paid. The Debtor failed to make the payments. Thereafter and on February 25, 1985, the case was converted to one under Chapter 7. Even following the January 30 hearing and before the payment dates arrived, Owens took no steps to file any

5. A corporation, of course, does not speak any language. The reference was no doubt to Mr. Karakas and was a telling slip of the tongue as to who had intended to seek protection when the petition was initially filed. Whether Mr. Karakas in fact, lacks fluency in English has been questioned. See footnote 8.

6. See colloquy in Transcript of January 30, 1985 hearing at 67.

action to protect the Debtor's claimed right to void, avoid or somehow modify the lease.

Owens has never been retained by order of this court. See Bankruptcy Code § 327(a) and Bankruptcy Rule 2014. This alone is sufficient grounds to deny compensation.

> "The longstanding rule is that professional services performed for a bankruptcy estate are compensable out of the assets of the estate only if such professional assistance has been authorized by the court prior to the services being rendered." *In re Morton Shoe Companies, Inc.,* 9 B.C.D. 654, 22 B.R. 449 (Bankr.D. Mass.1982).

Owens apparently did not understand the significance of retention by court order as the firm has failed to even request a nunc pro tunc retention. In any event, such a retention could not be permitted in this case. See *In re Progress Lektro Shave Corp.,* 117 F.2d 602, 604 (2d Cir.1941). See, generally, *In re Triangle Chemical, Inc.,* 697 F.2d 1280 (5th Cir.1983).

■ The attorney's affidavit submitted by Ms. Owens on March 8 reflects a lack of understanding of the basic principles governing compensation in a Chapter 11 case. The March 8 affidavit states in part:

> "This case is clearly a petition for a 'business' case and therefore should not be subject to the scrutiny which would otherwise be imposed in a 'nonbusiness' proceeding. * * * The general rule requires that the retainer fee be based on the hourly rate charged by the attorney and the number of hours of work en-

gaged in by counsel. The [U.S.] 'Trustee' herein attempts to amend this rule to include a value judgment regarding the competence and efficiency as the determining factor, implying that the failure of the debtor to be eligible for rehabilitation to be the fault of counsel."

Ethical violations are indeed relevant to a fee determination.[7] See *In re Devers,* 507 F.Supp. 468, 471 (D.C.D.C.1981).

■ In passing on fee applications, whether in business or nonbusiness cases, the court is required by the Bankruptcy Code itself to consider

> "the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under [the Bankruptcy Code]." Code § 330(a)(1).

Bankruptcy courts frequently refer to *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974), a nonbankruptcy case, and the factors it lists should be considered in reviewing fee requests, which include the complexity of the case, the experience of counsel and the results achieved. The present case involved a small business and was neither complex nor unusual. The results achieved, specifically the loss of the leasehold and the conversion of the case to Chapter 7, were abysmal[8] and not attributable solely to "the failure of the debtor to be eligible for rehabilitation" as counsel asserts. The lease was lost through failure to timely assume it, as well as failure to pay the rent, and failure to commence any appropriate legal action to alter or modify the rental obligation. The

---

**7.** Canon 6 states that a "lawyer should represent a client competently." Ethical Consideration 6–1 states

> "Because of his vital role in the legal process, a lawyer should act with competence and proper care in representing clients. He should strive to become and remain proficient in his practice and should accept employment only in matters which he is or intends to become competent to handle."

**8.** Unfortunately, the Debtor's principals may have through counsel's efforts succeeded in obtaining what they wanted as they operated a cash business generating at least $2,000 a week for four months after filing the petition and

only paid $2,000 in rent. An affidavit from a Noah Sirota was submitted by the U.S. Trustee in support of the application for conversion which states that that affiant had visited the premises on numerous occasions, that Mr. Karakas speaks English fluently, and that Mr. Karakas had asked Mr. Sirota whether Mr. Sirota thought Mr. Karakas could keep the premises open for 5–6 months without paying rent. Mr. Sirota's affidavit further states that Mr. Sirota observed Mr. Karakas with others strip the store of merchandise and fixtures on January 30 at 7 p.m., again on February 4 at 11 p.m. and on February 5 at 4 p.m.

case was converted as a result of the loss of the leasehold.

For these reasons, the court adheres to its original determination that Owens be directed to return the $2,300 received to the Chapter 7 Trustee, Ira S. Greene, Esq., with said amount to be paid over to the Trustee within 15 days of the date hereof.

It is so ordered.