### In the Matter of BOSTON AND MAINE CORPORATION, Debtor.

No. 70-250-M.

United States District Court, D. Massachusetts.

March 31, 1986.
Supplemental Memorandum June 24, 1986.

See also 456 F.Supp. 412, 468 F.Supp. 996, 468 F.Supp. 1010, 62 B.R. 196.

Lewis H. Weinstein, Jerome Preston, Jr. and Philip Burling, Foley, Hoag & Eliot, Boston, Mass., for Institutional Bondholders.

Benjamin H. Lacy, Hill & Barlow, Boston, Mass., counsel to debtor's trustee.

## MEMORANDUM AND ORDER

*On Petition of Institutional Bondholders For Allowance Under Section 77(c)(12) [11 U.S.C. § 205(c)(12)]*

FRANK J. MURRAY, Senior District Judge.

The Group of Institutional Bondholders (the "Group") seeks allowance by order of the court out of the estate of the Debtor, pursuant to Section 77(c)(12)[1] of the Bankruptcy Act (the "Act"), of expenses incurred by them in these reorganization proceedings. The Group consists of holders of First Mortgage Bonds of the Debtor having no formal organization but acting jointly in these proceedings. The Debtor's Trustee (the Manager of the Segregated Account) appeared in opposition to the Group's petition, but raised no question of the qualification of the Group to present this petition as a party in interest within the meaning of the phrase "parties in interest" in Section 77(c)(12) [11 U.S.C. § 205(c)(12)] of the Act.

The Group filed on March 9, 1979 its petition (herein "the first petition") with the court seeking an *interim* allowance of expenses paid for legal services and services of a transportation consultant by the Group from March 1, 1970 through Janu-

---

1. The pertinent parts of Section 77(c)(12) on this petition for allowance follow:

   Within such maximum limits as are fixed by the Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) incurred in connection with the proceedings and plan by parties in interest .... The Commission shall, at such time or times as it may deem appropriate, after hearing, fix the maximum allowances which may be allowed by the court pursuant to the provisions of paragraph (12) of this subsection (c)....

ary 3, 1973 in the amount of $655,101.98. Affidavits in support of the first petition, and annexed thereto, were submitted by *Howard C. Westwood* of the law firm of Covington & Burling, *Lewis H. Weinstein* of the law firm of Foley, Hoag & Eliot, and by *Charles C. Shannon* of the transportation consultants firm of Wyer, Dick & Co. The court ordered the first petition referred to the Interstate Commerce Commission (the "Commission") on March 19, 1979 for determination of the maximum limits within which an allowance may be made. On January 11, 1980 the Commission responded by its decision setting the maximum limits "at zero". Finance Docket No. 26115 (Sub-No. 10) at 5 (Decided Dec. 27, 1979). The Group made no request to the court for further action on the first petition.

On September 28, 1982 the Group requested the court to refer its petition (herein "the second petition") to the Commission for the determination of maximum limits of allowable expenses paid by the Group for the period March 1, 1970 through January 3, 1973, the same period described in the first petition. There was annexed to the second petition duplicates of the three affidavits appended to the first petition. In the second petition the allowance sought was changed from *interim* to *final* reimbursement of expenses paid by the Group, and the amount changed to $669,101.98. Except for these changes the second petition in all material respects was like unto the first petition. The court referred the second petition to the Commission on October 1, 1982 to fix the maximum limits of expenses allowable by the court pursuant to Section 77(c)(12) [11 U.S.C. § 205(c)(12)] of the Act. The Commission responded by its decision filed August 1, 1983 fixing the maximum limits in the amount of $663,003.73. Finance Docket No. 26115 (Sub-No. 29) at 4 (Decided July 25, 1983). The Chairman of the Commission dissented with a statement. *Id.* at 5.

Prior to the filing of the second petition with the court on September 28, 1982, the Commission had approved the Trustees' 1975 plan of reorganization (as amended December 29, 1980, July 15, 1981 and February 25, 1982), and had certified the amended plan to the court together with a transcript of the proceedings before the Commission and a copy of its report and order approving the plan. On December 30, 1982, after hearing, the court approved the amended plan, and subsequently confirmed the amended plan and fixed June 30, 1983 as the consummation date of the plan. After further proceedings before the court, the plan was consummated on June 30, 1983.

The second petition came on to be heard by the court on the Group's request for an allowance "out of the [D]ebtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) incurred [by the Group] in connection with the proceedings and plan ...", in accordance with Section 77(c)(12). At the hearing the Group sought an order of the court granting it an allowance of expenses incurred in the amount of $663,003.73, the amount exactly equivalent to the maximum limits fixed by the Commission as stated in the report filed with the court on August 1, 1983.

It was not disputed that the Commission had not held a hearing on either the first or second petition. The material presented to the court for the hearing of the second petition included the second petition with the appended affidavits, the Commission's decisions filed January 11, 1980 and August 1, 1983, the oral testimony of *Howard C. Westwood* and *Walter R. Ernst* (of Wyer, Dick & Co.), a copy of the second proposed plan of reorganization presented by the Group to the Commission during the reorganization process, and the oral testimony of the Debtor's Trustee.

The only record of what occurred before the Commission or of its actions on the first and second petitions is set forth in the Commission's decisions. Neither the Group nor the Trustee attacked the Commission's determination of maximum limits. The Trustee argued that a minor part of the Group's services described in the affidavits could be accounted beneficial to the

Debtor's estate, and that an allowance to the Group should be measured proportionately to those benefits.

■ The Group has the burden of showing that the services for which it incurred actual expenses constructively benefited the Debtor's estate and promoted the course of the reorganization. The estate should not be charged for cumulative or duplicated services already rendered by the Debtor's Trustees or by others. Moreover, where the services are directed to promoting the separate and distinct interests of the party in interest, and not the estate as a whole, the services must be discounted. Counsel for the Group acknowledged that the Group was not acting in the exercise of a fiduciary duty in the reorganization proceedings but were in effect volunteers. The Debtor's Trustee does not dispute that the Group may be allowed a measure of reimbursement of actual expenses incurred, but should not be allowed all that the Group claims.

■ The crucial issue on this record is the existence of evidence to support proof within the principles applicable of the amount of the allowance. The Group relies greatly on the Commission's decision on the second petition. In the field of railroad reorganization the expertise of the Commission is recognized, and this court has accorded weight and deference heretofore to the Commission's reports and recommendations when there was warrant for the Commission's actions. *In re Boston and Maine Corporation,* 378 F.Supp. 68, 79 (D.C.Mass.1974). Where here the evidence on the second petition before the Commission was the same evidence submitted in support of the first, the reasons advanced in support of the August 1, 1983 decision appear lacking in principled explanation of the differences in analysis of the evidence from that expressed in the earlier decision. Under Section 77(c)(12) it is clear that while the Commission's role is to determine the maximum limits, it is the judge who makes the "allowance to be paid out of the debtor's estate ...". The parties have not made an issue of the determination of the maximum limits; they have made the issue the amount of the allowance by the judge "for the actual and reasonable expenses (including reasonable attorney's fees) incurred in connection with the proceedings and plan ...". *Id.*

The court has before it all the evidence that was before the Commission on the first petition and on the second petition. As described above, the court received evidence at the hearing that was not presented to the Commission. It has been represented to the court that there is other available evidence, that has not been tendered to the Commission or the court, which for reasons not altogether clear to the court the Group is willing to offer under certain circumstances. Such evidence may provide more illumination of the issue before the court than the present record.

Leave is granted to the Group to present such additional evidence within twenty-one (21) days after exhibiting the same to the Debtor's Trustee. The court suggests that the parties meet and explore the possibilities of agreeing upon the facts. If no agreement is reached, upon motion of either party the court may be asked to close the record and dispose of the case. It is so ORDERED.

## SUPPLEMENTAL MEMORANDUM

■ Counsel for the Institutional Bondholders (the "Group") and the Debtor's Trustee (the Manager of the Segregated Account) met and considered the court's suggestion set forth in the Memorandum filed March 31, 1986 concerning the Group's petition for allowance of reimbursement of expenses pursuant to Section 77(c)(12) of the former Bankruptcy Act. Their discussion and negotiations have resulted in a stipulation entered into by the Group and the Trustee of the allowance in the total amount of $360,000.00 with respect to the Group's petition, and to certain other matters. The stipulation has been presented to the court by counsel for the Group and counsel for the Trustee, who jointly seek the court's approval of the

stipulation (a copy of which is appended hereto and marked "A"). The stipulation proposes *inter alia* to resolve all issues between the Group and counsel for the Group (Foley, Hoag & Eliot, Esquires), on the one hand, and the Debtor's estate, on the other. At the hearing held on the Group's petition seeking the allowance of $663,003.73, the Debtor's Trustee did not dispute the award of an allowance to the Group measured by reimbursement of certain actual expenses incurred but did object to the allowance of the Group's claim measured by the maximum limits of the claim as determined by the Interstate Commerce Commission (the "Commission"). The Group's claim in the amount of $663,003.73 presents numerous disputed complex issues of fact and law, including questions of the respective roles of the Commission and the court upon the record before the court. Resolution of these complex disputes by the proposed stipulation represents the parties' recognition of the advantages of the prompt and certain termination of the litigation possibilities, and avoidance of the reasonably foreseeable costs which would be involved in further contest. The settlement by stipulation does not impair the consummation of the plan and the court will approve the stipulation.

## ATTACHMENT A

### STIPULATION WITH RESPECT TO PETITION OF GROUP OF INSTITUTIONAL BONDHOLDERS

Robert W. Meserve, as Manager of the Segregated Account established by the Plan of Reorganization of Boston and Maine Corporation (hereinafter called the "Manager"); and the Group of Institutional Bondholders consisting of The Equitable Life Assurance Society of the United States, Metropolitan Life Insurance Company, The Northwestern Mutual Life Insurance Company and Connecticut Mutual Life Insurance Company (hereinafter called the "Group") hereby stipulate to the allowance, in the total amount of $360,000, of the Petition of the Group pursuant to Section 77(c)(12) for Allowance of Expenses Incurred in Connection with these Proceedings, dated September 25, 1982, and to the payment to Foley, Hoag and Eliot, as attorneys for the Group, from the Segregated Account, of the said sum of $360,000 in full satisfaction of the claim asserted by the said Petition and all other claims of the Group against any of the Trustees of the Property of the Debtor, the Manager, the Segregated Account, the reorganized Boston and Maine Corporation, any class consisting of holders and/or former holders of bonds of the Debtor, the First Mortgage Holdback Reserve established pursuant to Section 6.02(i) of the Consummation Order herein, as amended by Supplemental Order (No. 2) (Order No. 725–B) or the $450,000 Reserve for the First Mortgage Trustees created by Order No. 372 herein, as modified by Section 6.02(j) of the said Consummation Order, as so amended.