**In re WABASH VALLEY POWER ASSOCIATION, INC., Debtor.**

**Bankruptcy No. IP85–2238RA S.**

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Jan. 23, 1987.

474

Steven Ancel, Indianapolis, Ind., for ADT. David Kleiman, Indianapolis, Ind., for WVPA.

George Kielman, Washington, D.C., for REA.

ENTRY ON APPLICATION FOR INTERIM FEES AND EXPENSES BY ATTORNEYS FOR OFFICIAL MEMBERS COMMITTEE

NICHOLAS W. SUFANA, Bankruptcy Judge.

Ancel, Dunlap & Traylor, P.C. ("ADT") filed its application for allowance of interim compensation and reimbursement of costs advanced on July 7, 1986. On October 24, 1986, the United States of America, on behalf of the Rural Electrification Administration ("REA"), objected to that application. Wabash Valley Power Association ("WVPA") filed a memorandum in support of ADT's application on November 17, 1986.

After notice to all parties, ADT's application and REA's objection came before this Court for hearing on November 21, 1986. Steven Ancel appeared for ADT. David Kleiman appeared for WVPA. George Kielman appeared for REA. At the close of the evidence, the Court gave ADT and REA the opportunity to file memoranda in support of their respective positions. ADT filed a memorandum on November 25, 1986.

The Court has reviewed the record and considered the arguments of counsel, and now makes the following entry. This entry shall serve as the findings of fact and conclusions of law required by Bankruptcy Rules 9014 and 7052.

### The Facts and the Issues

WVPA filed its Chapter 11 petition on May 23, 1985. An official committee of member cooperatives ("Committee") was appointed by this Court on May 28, 1985. That same date, the Court authorized the Committee to employ ADT as its attorneys. REA never objected to the appointment of the Committee or the employment of ADT, but the absence of an objection may indicate only that REA was not prepared to respond to the Chapter 11 filing and the pleadings which followed rather than acquiescence in the appointment of the Committee and the employment of ADT.

REA is listed on WVPA's schedules as a secured creditor because the REA had guaranteed loans to WVPA from the Federal Financing Bank for several projects undertaken by WVPA. Those projects included WVPA's 17% stake in the failed Marble Hill nuclear power plant, aptly described by WVPA's counsel as a "fiasco."

REA claims that it is secured by all of WVPA's assets, but the nature and extent of REA's security interest is not clear from the schedules. REA has never sought a determination of its security interest, has never sought to have the automatic stay lifted, and only recently filed a request for adequate protection—and that request only

addresses two new substations apparently built by WVPA since the filing.

WVPA has filed a plan in the case, but has not presented a disclosure statement. WVPA has requested valuation of all of its assets. That valuation presumably will determine whether REA is oversecured or undersecured and will provide the information which WVPA needs to prepare a disclosure statement and to evaluate the feasibility of its most recent plan. The hearings on valuation commence in late February and are scheduled through the end of May.

Meanwhile, WVPA has continued to operate during the Chapter 11. Because those operations have been profitable, WVPA has generated a fund in excess of $1,000,000.00 while paying all administrative claims in full.

In its application, ADT seeks interim fees of $10,618.75 and reimbursement of expenses totalling $295.48.

ADT's application and REA's objection present this Court with two issues. First, can the Court award interim fees to ADT when it is unclear whether there will be any unencumbered assets in the estate? Second, may the fees requested be awarded in the full amount requested?

### The Court's Power to Award Interim Fees

REA has objected to the award of interim fees because it contends such fees would be paid out of its collateral or the proceeds thereof. REA also asserts that fees cannot be charged to its security pursuant to 11 U.S.C. 506(c) because ADT is not a trustee or the debtor-in-possession and because ADT's activities have not benefitted REA. Finally, REA notes that the members of the Committee have the means to pay ADT for its services.

Both WVPA and ADT respond to REA's contentions by noting the ongoing dispute over whether REA is undersecured. WVPA also asserts that even if REA has a security interest in all of the assets presently in the estate, other unencumbered assets may yet come into the estate through avoidance actions under 11 U.S.C. Sections 544, 545, 547, 548, and 549, and as the result of litigation against Public Service Company of Indiana and its officers, and against the contractors and suppliers on the Marble Hill project. WVPA also points out that it has suggested in its plan that REA should be subordinated because of its active involvement with WVPA's operations pre-petition. Finally, both WVPA and ADT suggest that even if REA holds a lien on all the assets and is undersecured, fees can be awarded under Section 506(c), under the so-called "equity exception" of 11 U.S.C. 552(b), or because the REA has forced the Chapter 11 filing and therefore should be deemed to have consented to the award of fees.

■ Many of these arguments are premature. At this point the Court is only considering the award of interim fees pursuant to 11 U.S.C. 331. Interim awards may be reexamined and adjusted during the course of the case, and all expenses of administration must receive this Court's final scrutiny and approval. Interim awards are refundable to the estate if it subsequently becomes necessary to pro rate administrative expenses. *In re American International Airways, Inc.*, 47 B.R. 716 (Bankr.E.D.Pa.1985); *In re Energy Cooperative, Inc.*, 55 B.R. 957 (Bankr.N.D.Ill. 1985). The Court is not confronted with a request for final fees at the end of the case, after resolution of all the issues and a determination as to the size of the estate and the unencumbered assets available to pay fees. The Court is only called upon to determine if, given the present state of this case and the many unresolved issues, interim fees can be awarded.

The Court has discovered many cases where interim or final fees were refused because all of the estate's assets were encumbered. Some of those cases were originally filed under Chapter 7 and no unencumbered assets came into the estate. *Matter of Trim X, Inc.*, 695 F.2d 296 (7th Cir.1983); *In re Manchester Hides, Inc.*, 32 B.R. 629 (Bankr.N.D.Iowa 1983). In many

of those cases, the Chapter 11 proceeding was unsuccessful and had been converted to Chapter 7 or had been otherwise liquidated, so that the Court had a fixed sum of money to divide among several claimants. *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir.1984); *Matter of S & S Industries, Inc.*, 30 B.R. 395 (Bankr.E.D. Mich.1983); *In re Korupp Associates, Inc.*, 30 B.R. 659 (Bankr.D.Me.1983). In one case, the parties had stipulated that the assets were insufficient to pay all administrative expenses in full. *In re Chips'N Twigs, Inc.*, 58 B.R. 109 (Bankr.E.D.Pa. 1986).

However, here it is not clear whether the assets are all encumbered. WVPA is still operating, and is generating new assets as the case progresses. Several bankruptcy courts faced with similar facts have allowed the award of interim fees, given that those fees can be ordered repaid to the estate when the case reaches its conclusion.

The bankruptcy court deciding *In re Energy Cooperative, Inc.*, 55 B.R. 957 (Bankr. N.D.Ill.1985) awarded interim fees despite the possibility that no assets in the estate might be unencumbered and the existence of a superpriority lien. That court viewed the many cases on this issue and discovered a clear split between the Second Circuit and the Tenth Circuit. The Second Circuit had decided in *In re Flagstaff Food Service Corp.*, above, that interim fees could not be awarded absent unencumbered assets or the proper application of Section 506(c). The Tenth Circuit, in *Ingersoll-Rand Financial Corp. v. Callister*, 13 B.C.D. 21 (10th Cir.1984), affirming *In re Callister*, 15 B.R. 521 (Bankr.D.Utah 1981), allowed the award of fees despite the fact such fees would be paid from funds earmarked for a superpriority secured creditor.

The *Energy Cooperative* court noted that the Seventh Circuit has not ruled on the issue, and selected the Tenth Circuit approach because that approach "appears to effectuate more closely the intent of Congress by allowing discretion to balance the competing interests of secured and/or

superpriority claimholders and professional fee applicants on a case-to-case basis." 55 B.R. at 967. (The court also noted that the superpriority and secured claimants faced an adversary proceeding which requested that their claims be subordinated. 55 B.R. at 966, footnote 27.)

A similar case is *In re American International Airways, Inc.*, 47 B.R. 716 (Bankr.E.D.Pa.1985). There the security interests were disputed or otherwise unclear. Despite the possibility that an award of interim fees might ultimately mean that the undersecured creditors had paid those fees, the court awarded fees, given the absence of a decision on the security interest and the fact that the fees requested were a small percentage of the funds available in the estate at the time.

The facts here present an even stronger case for the award of interim fees. Unlike the debtor in the *American Airways* case, WVPA is still operating, and is still generating new assets. Unlike the secured creditors in the *American International Airways* case, the *Flagstaff Foodservice* case, the *Energy Cooperative* case, and even the *Callister* case, REA has never been granted a superpriority lien by this Court.

Indeed, the facts here are most similar to those in the case of *Wilson Freight Co. v. Citibank, N.A.*, 21 B.R. 398 (S.D.N.Y.1982). There the debtor owed the secured creditor over $22,000,000.00 before filing, and that debt was secured by "virtually all" of the debtor's assets. 21 B.R. at 399. Shortly after the filing, the bankruptcy judge suggested that the secured creditor seek the return of its assets. Instead of seeking that return, the secured creditor advanced an additional $12,000,000.00 to the debtor. (The case does not indicate whether the secured creditor received a superpriority lien in exchange for the post-petition funds.) When counsel for the unsecured creditors committee sought an award of interim fees, the secured creditor objected.

The bankruptcy court awarded the fees over the objection, and the district court affirmed, citing Congressional intent:

... the Congress would not have provided the elaborate procedures envisioned by Chapter 11—including specific authority for the appointment of committees of unsecured creditors and their counsel—unless it intended such provisions to be made workable by permitting the compensation of committee counsel in appropriate situations. 21 B.R. at 401

The district court also noted that even though the committee consisted of corporations who could presumably pay the committee's counsel themselves, that fact had "no bearing on the proper interpretation of the statute." 21 B.R. at 401, footnote 3.

■ One court has suggested that the *Wilson Freight* case was implicitly overruled by the *Flagstaff Foodservice* case. *In re Chips'N Twigs, Inc.*, above. Another court has suggested that the *Wilson Freight* court implicitly determined that the secured creditor had consented to the payment of interim fees. This Court believes that the *Wilson Freight* case cannot be so easily dismissed. The case holds that Congress intended to empower the bankruptcy courts to award interim fees despite the possibility that those fees may turn out to have been paid from encumbered assets or their proceeds.

■ The following facts stand out in this case. First, the nature and extent of REA's security interest and whether the REA is undersecured have not yet been determined, and may not be determined for several months. Second, WVPA continues to operate and to turn a significant profit post-petition. Third, WVPA has indicated that it may attempt to have REA's claim equitably subordinated. Fourth, the total fees requested by ADT are a small fraction of the funds which WVPA has on hand, and a minuscule fraction of the total sums owed REA. Finally, the Members' Committee and its counsel have assisted this Court and aided the estate.

Given all these facts, the Court now determines as a matter of law that it has the power to award interim fees to ADT and to other applicants pursuant to 11 U.S.C. Sections 331 and 105(a).

Should this Court eventually determine that REA has a security interest which covers all of WVPA's assets and that REA is undersecured, then the Court will determine whether the fees are justified under Section 506(c) or Section 552(b), and will consider the novel argument that REA somehow forced WVPA into bankruptcy and should therefore bear the administrative expenses. The Court makes no finding on those issues at this time.

### The Application of ADT

The Court has determined that it can award fees over REA's objections. Now the Court must determine whether ADT is entitled to fees and, if so, the amounts appropriate. The Court has recently expounded on the standards used in determining fee awards, and repeats that analysis here.

Fee Awards Generally. ADT had its employment pursuant to 11 U.S.C. Section 1103(a) approved by this Court, and ADT requests fees and expenses pursuant to 11 U.S.C. 330 and 331. Section 330 allows this Court to award "reasonable compensation for actual, necessary services." Implicitly, an applicant seeking "compensation pursuant to Section 330 would have made a substantial contribution to justify an award by the court." *In re Rockwood Computer Corp.*, 61 B.R. 961 (Bankr.S.D.Ohio 1986).

■ The approach which the Court uses to analyze the propriety of fee requests is the lode star method. *In re AOV Industries, Inc.*, 43 B.R. 468 (D.D.C.1984). Using this method, the Court appraises the number of hours reasonably expended and multiplies such hours by reasonable hourly rates to derive a base which may be adjusted upward or downward depending on other factors. *Matter of Boston and Maine Corp.*, 46 B.R. 983 (D.Mass.1984); *In re Watson Seafood & Poultry Co., Inc.*, 40 B.R. 436 (Bankr.E.D.N.C.1984).

■ Determining the number of hours reasonably expended requires the Court to

review the activities of the fee applicants and eliminate from the requests services directed to promoting their separate and distinct interests and not those of the estate as a whole. *Matter of Boston and Maine Corp.*, 62 B.R. 708 (D.Mass.1986). The Court should also reduce the hours claimed by an applicant where review indicates that the number of hours claimed is inaccurate, that the number of hours actually expended is excessive, or where the application is lacking the detail sufficient to allow the Court to make an adequate assessment of the reasonableness of the time spent. *In re General Oil Distributors, Inc.*, 51 B.R. 794 (Bankr.E.D.N.Y.1985).

 Several other factors may require the reduction of the hours claimed by the applicants in determining the number of hours reasonably expended. When the applicants have used a minimum billing time of one-quarter hour or more, the Court may reduce their fees accordingly. Every phone call does not last fifteen minutes. In this age of computer-generated time records, use of a one-tenth hour minimum billing time is both more reasonable and more accurate. *In re Four Star Terminals, Inc.*, 42 B.R. 419 (Bankr.D.Alaska 1984). When several attorneys have been involved in the case, the Court may reduce fee awards to the attorneys across the board to account for duplicative hours. *In re Island Helicopter Corp.*, 53 B.R. 71 (Bankr.E.D.N.Y.1985). The Court should not compensate both a partner and an associate for conferring with each other, nor should the Court compensate for time spent by an associate attending a hearing as a silent assistant to a partner, absent some showing that the presence of the associate contributed to the hearing. *In re American International Airways, Inc.*, 47 B.R. 716 (Bankr.E.D.Pa.1985).

 Some courts refuse to compensate attorneys for activities such as phone calls and letters which are ministerial or non-legal, and so delete the hours spent in such tasks from the hours reasonably expended. *In re Jansen*, 47 B.R. 641 (Bankr.D.Ariz.1985). For several reasons, this Court does not espouse such a rule. First of all, those so-called ministerial activities may result in the informal resolution of disputes and prevent costly litigation. *In re Jensen-Farley Pictures, Inc.*, 47 B.R. 557 (Bankr.D.Utah 1985). Second, the Court does not wish to be involved in deciding which letters are best written by an attorney and which could be handled by someone with no legal training. The Court will always review the attorney's activities to determine that they are reasonable and necessary, and no further bright line rule attempting to distinguish between ministerial and legal activities would be useful. However, this Court distinguishes between ministerial and clerical activities. Professionals should not be compensated for clerical activities such as copying documents or delivering papers.

 Some courts refuse to include in the number of hours any time spent preparing fee applications, on the grounds that the preparation of those applications really does not benefit the estate. *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985). This Court believes that the preparation of fee applications provides some benefit to the estate in that such applications assist the Court in determining proper administrative expenses. However, because such preparation is of less benefit to the estate than other services, time spent in preparing fee requests will be compensated at a lower rate. *In re W.G.S.C. Enterprises, Inc.*, 47 B.R. 53 (Bankr.N.D.Ga.1985).

 Once the Court has determined the reasonable number of hours, the Court must then determine the reasonable hourly rate. That rate depends on who has done the work, normal hourly rates for professionals of similar experience, and the time during which the services were rendered. The delay between the performance of services and the award of fees is properly considered after the determination of the lode star, as noted below.

 Once the lode star is determined, the Court must decide whether the lode star should be raised or lowered.

Factors which the Court may consider in evaluating the lode star figure include the difficulties and complexities encountered by the applicant, the undesirability of the case, and the experience, reputation and ability of the applicant. *Matter of Rego Crescent Corp.*, 37 B.R. 1000 (Bankr.E.D. N.Y.1984). The lag between the performance of services and the award of compensation should also be considered. If the time span is large, the lode star may be increased by some percentage. Such an increase should not be mistaken for the award of interest on fees. Applicants do not become entitled to fees until the Court awards them. Rather, increase of the lode star because of time delay between the services and the award of fees recognizes that the applicants could have engaged in other work and received compensation more promptly. Because interim fees are awarded when the results ultimately achieved cannot be determined, only rarely will the Court increase the lode star in an interim fee award.

Since the Court must consider an array of factors when evaluating fee applications, the applicants must provide the Court with detailed information in support of their requests. Bankruptcy Rule 2016. The time records supplied with the application must reveal not only the duration of each activity, but also the substance of that activity. Records listing phone calls made and letters written, research performed, and meetings attended, without more, are insufficient to support an award of fees. *Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570 (N.D.Ind. 1984); *In re Shades of Beauty, Inc.*, 56 B.R. 946 (Bankr.E.D.N.Y.1986). The time records should indicate who performed which activity. *Matter of 437 Park Corp.*, 54 B.R. 326 (Bankr.S.D.N.Y.1985). The application should detail the subject of conferences and phone calls. *In re Holthoff*, 55 B.R. 36 (Bankr.E.D.Ark.1985). Whenever an item relating to an activity for which fees cannot be awarded appears in a block of services with no breakdown provided, then the time spent on that entire block

should not be compensated. *In re Four Star Terminals, Inc.*, above.

Expenses are only compensable if reasonable, necessary, and related to the bankruptcy case. Further, this Court will not reimburse counsel for items which are part of overhead. Expenses which would be incurred regardless of which client the attorney represents are part of overhead. *In re Island Helicopter Corp.*, above. Thus secretarial and clerical services and use of word processors are not compensable. *In re Four Star Terminals, Inc.*, above. This Court also believes that travel to and from court to file documents is part of overhead and not compensable. By contrast, postage and photocopying expenses are compensable. Ideally, the application should detail the number of photocopies and the reason for photocopying. *In re Island Helicopter Corp.*, above. At the very least, the application should indicate the charges per copy.

With these guidelines in mind, the Court has reviewed ADT's application for interim fees and reimbursement of expenses.

The Application of ADT Specifically. Before analyzing ADT's application in detail, the Court must first determine that ADT is entitled to fees from the estate, which requires a determination that ADT has contributed to the case.

As noted in the application and as revealed in the testimony at the hearing, ADT has been active since the commencement of the case, has participated in the formulation of both plans which have been submitted, and is also involved in the valuation process. ADT has substantially contributed to the case, and is entitled to an award of fees.

Next the Court must determine the lode star figure for ADT. In calculating the lode star figure, the Court first considers the number of hours expended by each of the attorneys in the case, examines the services performed, eliminates time which cannot be compensated, and estimates the reasonable time required to perform the compensable services.

The senior partner on the case for ADT lists 38.45 hours of services. The application contains only minimal detail about those services. For example, the entry for June 25, 1986, reads simply "Review pleadings." Greater detail will be required in future applications.

▮▮ REA has also suggested that the senior partner should not be compensated for time spent speaking with newspaper reporters. The Court in earlier cases of public interest has awarded fees for time spent speaking with reporters. See *In re Nashville Alps Ski Resort, Inc.*, Case No. IP81-4022RAS. Information conveyed to the media may assist interested parties in understanding the case and may reduce the number of inquiries received by Court personnel. The Court wants the media to receive the most accurate information possible, and will compensate the attorneys involved in this case for reasonable time spent responding to pertinent media inquiries.

The Court determines that the reasonable time expended by the senior partner for ADT was 37 hours.

Two associates also have worked on this case. One of those associates has recorded 35.4 hours in the application. However, many of those hours duplicated time spent by the senior partner. For example, the associate joined the senior partner in a meeting with counsel for WVPA and with this Court shortly after the case was filed (entry of 5/28/85), attended a meeting at WVPA and a meeting of the Committee with the senior partner (entries of 6/13/85 and 8/5/85), attended the first meeting with the senior partner (entry of 8/9/85), and joined the senior partner at the hearing on the application to sell the assets remaining at Marble Hill (entry for 10/4/85). The attendance of this associate at these meetings and hearings has not been shown to be necessary or particularly beneficial to this case, and therefore cannot be compensated.

The first associate also seems to have used a minimum billing time of two-tenths of an hour. See, for example, the several entries labelled "mail review," each consuming two-tenths of an hour. Given the activities which cannot be compensated and the use of the minimum billing time, the Court will credit the first associate's contribution to the estate at 28 hours.

The second associate only spent 3.5 hours on the case, and while the entry lacks detail, the Court will award compensation for all 3.5 hours.

The Court must now determine the reasonable rate at which the hours should be compensated. ADT called as its witness one of the most respected and experienced members of the bankruptcy bar, who testified that the reasonable hourly rate for an attorney with the bankruptcy experience of the ADT partner working on this case is from $150.00 to $175.00 per hour. ADT requests compensation for the senior partner's time at the rate of $175.00 per hour.

▮▮ The highest rate which this Court has awarded in recent months for an attorney with extensive bankruptcy experience is $135.00 per hour. However, this case is more complex than any recently before this Court. A rate of $150.00 per hour for partners with extensive bankruptcy experience is warranted in this case.

▮▮ ADT has requested that its associates' time be compensated at the rate of $100.00 per hour. However, the associate who spent the most time on the case had comparatively little bankruptcy experience, and that associate's time will be compensated at an hourly rate of $90.00. The other associate has practiced in these bankruptcy courts for several years, and that experience warrants an hourly rate of $100.00.

Combining the reasonable hours with the rates above yields the following lode star figure:

| | |
|---|---|
| 37 hours at $150.00/hour | $5,550.00 |
| 28 hours at $ 90.00/hour | $2,520.00 |
| 3.5 hours at $100.00/hour | $ 420.00 |
| Total | $8,490.00 |

▮▮ Interim fees of $8,490.00 will be awarded. At this time, that lode star figure will not be increased. The results of

ADT's efforts in this case are not yet known. However, when reviewing the case at its close the Court may increase the final award of fees if the hourly rate assigned to the time of the senior partner appears to have been too low given the results ultimately achieved.

ADT also requests $295.48 in expenses. Those expenses seem reasonable, and all of the types of expenses listed can be reimbursed. Again, the desired degree of detail is lacking. In the future, counsel should attempt to comply more fully with the guidelines set forth in this entry. For now, the Court will order the reimbursement of expenses in the full amount requested, subject to review at the close of the case.

### Conclusion

All counsel in this case should review this entry before submitting applications for compensation. While the application of ADT lacks the detail this Court desires, the Court acknowledges that ADT has not previously known of the heightened scrutiny which fee applications receive in this Court, and the information presented is sufficient for this Court to award fees. An order awarding ADT interim fees of $8,490.00 and reimbursement of expenses in the sum of $295.48 shall follow.