In the Matter of RIDGEMONT
APARTMENT ASSOCIATES,
LTD., Debtor.

Bankruptcy No. A88–02855–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 11, 1989.

See also, Bkrtcy., 93 B.R. 788.

Stephen C. Greenberg, Holt, Ney, Zatcoff & Wasserman, Atlanta, Ga., for debtor.

C. Richard McQueen, Jeffrey P. Sweetland, Greene, Buckley, DeRieux & Jones, Atlanta, Ga., for Atlanta English Village, Ltd.

Neil C. Gordon, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, Ga., for Federal Home Loan Mtg. Corp.

ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On October 19, 1988, the Court conducted a hearing on an application for interim

compensation filed by the above-referenced debtor's counsel, Holt, Ney, Zatcoff and Wasserman. An objection to the application was filed by Atlanta English Village, Ltd. ("AEV") and Federal Home Loan Mortgage Corporation ("FHLMC"). The objection asserts that the debtor's counsel should not be entitled to receive interim compensation when the only source available to pay such compensation is the cash collateral of the objecting parties. The Court took this issue under advisement. The background facts are as follows.

The debtor owns and operates a 413–unit apartment complex located in Fulton County, Georgia. The property serves as collateral for two liens. The first lien, held by FHLMC, secures a note which was executed by AEV prior to the purchase of the property from AEV by the debtor. AEV executed the note in the principal amount of $6,000,000.00 in favor of First Federal Savings and Loan of Warner Robins, which subsequently assigned the note to FHLMC. The second lien secures a wraparound note executed by the debtor in favor of AEV in the principal amount of $9,800,000.00.

After the debtor failed to pay the monthly installment due to AEV in March of 1988, AEV filed an action in the Superior Court of Fulton County to seek, *inter alia,* authorization to sell the property under the wrap deed's power of sale and the imposition of a constructive trust upon all rents and income of the property.

On April 1, 1988, the debtor filed its Chapter 11 petition. In its statements and schedules, the debtor lists only minor assets other than the apartment complex property.

Following a motion for relief from stay filed by AEV and joined in by FHLMC, the Court issued Orders which found that the debtor has no equity in the property and which conditioned the continuation of the automatic stay upon the debtor's making monthly payments to adequately protect AEV.

The effect of the Orders which so modified the stay has been stayed pending the debtor's appeal. The Court conditioned the stay pending appeal upon the debtor's posting of a supersedeas bond in the amount of $450,000.00, paying monthly to FHLMC the greater of the net operating income of the property or $35,000.00, and meeting other conditions.

On June 21, 1988, the Court entered an Order authorizing the employment of Holt, Ney, Zatcoff & Wasserman ("HNZ & W") as attorneys for the debtor-in-possession. On August 26, 1988, HNZ & W filed its Application for Interim Compensation and Reimbursement of Expenses for services rendered from March 31, 1988, through July 30, 1988. The application sought compensation in the amount of $45,353.50 and reimbursement of expenses in the amount of $2,283.67.

The Court has examined the application for compensation and finds that it complies with the Bankruptcy Code and Rules and adequately documents the services for which compensation is sought. The Court would therefore grant the application as to the amounts requested and, in the typical case, would permit the interim payment of 90% of the allowed compensation and 100% of the allowed expenses. In this case, however, the issue is whether any portion of the fees may be paid at this time pursuant to 11 U.S.C. § 331 when AEV and FHLMC assert that there are no unencumbered funds in the estate from which the fees could be paid.

Section 331 permits the Court in its discretion to allow the interim payment of professionals employed pursuant to § 327 and § 1103 of the Bankruptcy Code. The prior Bankruptcy Act, replaced by the Code in 1978, contained no such statutory authorization for interim fee awards, and allowances of compensation were often not made until the conclusion of the administration of the estate, which had the effect of charging a debtor's attorneys with financing the administration. *See* 2 *Collier on Bankruptcy* ¶ 331.01 (15th ed. 1988). The legislative history of § 331 indicates:

> The only effect of this section is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation or reimbursement during the case, instead of being re-

quired to wait until the end of the case....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6287; S.Rep. No. 989, 95th Cong., 2d Sess. 42 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5828.

██ There is therefore no question that this Court has discretionary authority to award interim compensation in an appropriate case. However, there is a question as to whether such discretion still exists in a situation where a creditor asserts that substantially all of the assets of the estate are subject to the creditor's lien or superpriority claim.

██ In support of their position, AEV and FHLMC rely primarily on the case of *In re Flagstaff Foodservice Corp.*, 739 F.2d 73 (2d Cir.1984), which reversed the bankruptcy court's decision to award interim compensation to be paid out of a superpriority claimholder's collateral without reference to any schedule of priorities. In the *Flagstaff* case, a creditor which had advanced post-petition credit to the debtor had a superpriority claim in all of the debtor's assets which remained in the estate at the time the application for interim compensation was filed. The amount of the superpriority claim exceeded the realizable value of the debtor's assets. 739 F.2d at 75. Under these circumstances, the appellate court held that interim compensation should not be paid out of the claimant's collateral unless the applicants could show that the requirements of Bankruptcy Code § 506(c) were met in that the applicant's services directly benefited the claimant or that the claimant in some way caused or consented to the incurring of the fees sought. 739 F.2d at 76–77.

In support of its position, the debtor relies primarily upon *In re Callister*, 15 B.R. 521 (Bankr.D.Utah 1981), which set forth the rationale ultimately adopted on appeal by the United States Court of Appeals for the Tenth Circuit at 13 B.C.D. 21 (10th Cir.1984), after dismissing an earlier appeal as an appeal of a non-final order at 673 F.2d 305 (10th Cir.1982). The debtor asserts that the *Callister* decision is authori-ty for the propositions that interim compensation should be paid notwithstanding the assertion of a superpriority lien and that interim compensation for a debtor's attorneys and other professionals should be paid on a preeminent basis under § 331 ahead of other claims. The debtor further asserts that the *Flagstaff* case is distinguishable from the case at bar because there is no assertion of a superpriority claim in this case.

The Court is of the opinion that it is not the existence of a superpriority claim that is the key to the *Callister* and *Flagstaff* decisions. This Court further believes that the *Callister* opinion was not intended to stand for the broad proposition asserted by the debtor—that the presumption in favor of awarding interim compensation should override any consideration of the facts and circumstances present in the case at the time of the application for fees. In fact, it appears that the *Callister* and *Flagstaff* decisions are not necessarily inconsistent with each other. Rather, the two cases dealt with two different situations.

In *Flagstaff,* it was clear that there were insufficient assets in the estate to pay the superpriority claim. *Flagstaff,* 739 F.2d at 75. In *Callister,* it was equally clear that there were more than sufficient assets to pay the superpriority claim and that there were over $300,000.00 in assets subject to a superpriority claim of about $30,000.00 and an interim fee request of $12,000.00. *Callister,* 15 B.R. at 523 n. 7, 535. Thus, the lesson to be learned from *Flagstaff* and *Callister* is that, when considering an award of interim compensation, the bankruptcy court should not ignore the consequences of making the payment in light of the circumstances which exist at the time of the award. In *Flagstaff* and *Callister,* the key question was whether there were sufficient assets in the estate to cover priority claims. When it appears likely that the assets will be sufficient, payment of interim compensation should be permitted. If it appears that the assets will be insufficient, the payment should be permitted only if the applicant can show that the application meets the requirements of

§ 506 or § 364 for use of the creditor's collateral towards the payment of the fees.

■ That this is often the key question can be seen by a case decided by the same court that decided the *Callister* case. In *In re IML Freight, Inc.*, 52 B.R. 124 (Bankr.D.Utah 1985), the Court held that when there are insufficient assets to pay all claims of equal priority, none should be paid until the prorata share can be determined. The Court distinguished its decision in *Callister* and stated:

> The essential fact to be considered ... is the certainty—not merely the possibility —that there will be insufficient assets to pay all costs of administration. The question is whether the Court should now, in the face of the estate's certain inability to pay Chapter 11 administrative expenses in full, authorize full payment to the trustee's accountants and attorneys, and the other Chapter 11 professionals, knowing that some measure of such fees will have to be repaid in order to effect a pro rata distribution....

*IML Freight,* 52 B.R. at 139. *See also In re Wabash Valley Power Association,* 69 B.R. 471, 475 (Bankr. S.D.Ind.1987) (interim fees awarded even though secured creditor may have had lien on all assets where assets appeared sufficient to pay priority claims); *In re Energy Cooperative, Inc.,* 55 B.R. 957, 967 (Bankr.N.D.Ill.1985) ("payment of fees would be allowed where there are assets on hand to cover all priority claims ... or, if, as here, it appears likely that there will be sufficient assets...."); *In re American International Airways, Inc.,* 47 B.R. 716, 722 (Bankr.E.D.Pa.1985) (when estate assets appeared adequate to pay administrative claims, interim fees were permitted to be paid out of a creditor's cash collateral).

In the case at bar, the Court has previously determined that the debtor has no equity in the apartment complex property. Thus, the rents and proceeds which the debtor collects out of such property constitute cash collateral as to which AEV and FHLMC may have rights which have priority over the rights of administrative claimants. If the debtor were left solely with § 506(c) as a source of authority for compensating its counsel, the Court would find that the requirements of § 506(c) have not been met since the services of the debtor's counsel did not confer any direct benefit upon the secured creditors, AEV and FHLMC, and the secured creditors did not consent to or cause the fees to be incurred. However, there are other facts and circumstances present in this case which will permit an award of some interim compensation.

First, this Court's Orders which found that the debtor lacks equity in the property are on appeal, and the debtor's plan, which is not yet confirmed, calls for an infusion of funds from the debtor's limited partners and other sources. Thus, it cannot be said with certainty that the estate's assets will be insufficient to pay administrative claimants. Furthermore, the Orders on appeal held that the debtor's monthly payment of $69,416.67 would adequately protect AEV and FHLMC. Pursuant to the conditions of the stay pending appeal obtained by the debtor, the debtor has been making monthly payments in a lesser amount and has filed a bond to cover the anticipated differences in the amounts paid in the event that this Court's Orders are affirmed. If interim compensation is awarded, the funds available to make these payments—i.e. the cash collateral in the form of the rents collected from the property—will be diminished, and the bond may no longer be in a sufficient amount to protect AEV and FHLMC on such use of its collateral. Again, however, the extent to which AEV and FHLMC will be damaged depends in part on the results of the appeal.

Since any payment to the debtor's attorneys will decrease the amounts paid to FHLMC which the Court found to be necessary to protect AEV and FHLMC against the possible consequences of the stay pending appeal, the Court finds that the existing facts and circumstances in this case will justify only an award of 25% of the allowed compensation at this time and 100% of the allowed expenses. Should the debtor file a supersedeas bond in the revised amount of $550,000.00 to further pro-

tect AEV and FHLMC from the consequences of the interim payment, the Court will permit the customary payment of 90% compensation.

Accordingly, it is ORDERED that the Application for Interim Compensation filed by debtor's counsel, Holt, Ney, Zatcoff & Wasserman, is ALLOWED in the amounts requested and 25% of the allowed compensation of $45,353.50 and 100% of the allowed expenses of $2,283.67 will be paid on an interim basis; and it is

FURTHER ORDERED that, if the debtor files a revised supersedeas bond in the increased amount of $550,000.00, 90% of the allowed compensation may be paid on an interim basis.

IT IS SO ORDERED.