**In re NEIBART ASSOCIATES PRESS, INC., Debtor.**

**Bankruptcy No. 882–82095.**

United States Bankruptcy Court, E.D. New York.

Dec. 10, 1985.

Schwartz, Sachs & Kamhi, Carle Place, N.Y., for debtor.

James Barr, New York City, Trustee.

Hahn & Hessen, by Harry Varon, New York City, for trustee.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Pending before the Court are applications for final compensation from the trustee, Mr. James Barr, the trustee's attorney, Hahn & Hessen, and the trustee's accountant, Roberts & Leinwander Co. This is the first request for compensation made by these professionals. The trustee is seeking an allowance of $1,970.20; Hahn & Hessen is requesting an allowance of $44,038.00 as compensation for legal services rendered to the trustee in the administration of the estate and $677.07 as reimbursement for necessary and actual expenses which it incurred in the performance of those services; Roberts & Leinwander asks for $6,000.00 as compensation for the services it rendered to the trustee and $225.00 as reimbursement for expenses.

Notice of the application for allowances was sent to all creditors in accordance with 11 U.S.C. § 330 and Bankruptcy Rule 2002. Objections to the amounts requested by the trustee's attorney and accountant were filed by Max Barocas, sole shareholder of the debtor corporation and a general creditor of the estate, and by 29–76 Realty Co., the former landlord and another general creditor of the estate.

Mr. Barocas appeared, to voice his objections in person, at the scheduled hearing on the applications, September 18, 1985. The grounds for the objections by Barocas and 29–76 Realty are:

(1) that the fees are excessive because, if allowed as requested, they would consume over half the monies available for distribution to the general creditors;

(2) that the efforts of these professionals did not produce a benefit to the estate proportionate to the amount of compensation which they are requesting; and

(3) that Hahn & Hessen is requesting compensation for time which it spent in the preparation of its fee application, which time, it is argued, is not compensable out of the estate.

The debtor, Neibart Associates Press, Inc. ("Neibart"), had a direct mass mailing business. It was forced into bankruptcy by its former accountant, Bernard Klinger, who filed an involuntary petition against it under Chapter 11 on August 17, 1982. Klinger thereafter moved to have the proceeding converted to Chapter 7, and an Order was entered on September 15, 1982 to that effect.

James Barr was appointed interim trustee on September 23, 1982 and succeeded himself as permanent trustee when the creditors' committee elected no one else. By Order dated September 30, 1982, Barr was authorized to retain the services of Hahn & Hessen to act as counsel for him in the administration of the estate and by Order dated December 8, 1982, he was permitted to retain Roberts & Leinwander to provide accounting services for him toward that same end. The trustee did not continue the business of the debtor, but liqui-

dated its assets and collected the monies due it.

The trustee's final report indicates that the receipts of the estate total $109,020.68. Disbursements total $11,822.26, leaving a balance of $97,198.42 available for distribution. There are four general creditors listed whose combined claims amount to $160,089.51 and who would receive just under 25 cents on the dollar on their claims if these fees were allowed in the full amount requested.

■ The Bankruptcy Code permits the award of reasonable compensation to the trustee and to professional persons employed by the trustee to represent him or assist him in the administration of the estate for actual, necessary services rendered and for reimbursement of actual, necessary expenses incurred in the performance of those services. 11 U.S.C. § 330.

■ Except that the concept of economy has been rejected by the Bankruptcy Code, the same factors developed under the Bankruptcy Act for determining what constitutes a reasonable fee for services in a bankruptcy proceeding continue to apply. *Matter of Hamilton Hardware Co., Inc.*, 11 B.R. 326 (Bankr.E.D.Mich.1981); *In re Garland Corp.*, 8 B.R. 826 (Bankr.D.Mass. 1981); 2 *Collier on Bankruptcy*, ¶ 330–05(2) (15th Ed.1980). They are as follows: (1) the nature of the services rendered; (2) the difficulties and complexities encountered; (3) time necessarily expended; (4) the results achieved; (5) the burden the estate can safely bear; (6) the size of the estate; (7) duplication of services; (8) professional standing, ability and experience of the applicant; and (9) fairness to each applicant. *Surface Transit, Inc. v. Saxe, Bacon & O'Shea*, 266 F.2d 862, 865 (2d Cir.1959); *In re Paramount Merrick, Inc.*, 252 F.2d 482, 865 (2d Cir.1958); *Matter of Rego Crescent Corp.*, 37 B.R. 1000 (Bankr. E.D.N.Y.1984); *Matter of D.H. Overmyer Co., Inc.*, 3 B.R. 678, 686 (Bankr.S.D.N.Y. 1980).

■ In order for the Court to determine the appropriateness of the fee requested,

accurate and detailed time records should be kept and submitted and include information with respect to, *inter alia*, the number of hours expended on each matter, the nature of the services rendered for the time recorded, and the customary hourly rate for that service. *Matter of Borgenicht*, 470 F.2d 283, 284 (2d Cir.1972); *In re General Economics Corp.*, 360 F.2d 762, 765 (2d Cir.1966); *In re Wal-Feld Co.*, 345 F.2d 676, 677 (2d Cir.1965); *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977); *In re Lafayette Radio Electronics Corp.*, 16 B.R. 360 (Bankr.E.D.N.Y. 1982).

### *Hahn & Hessen's Application*

Hahn & Hessen is an outstanding bankruptcy firm with great expertise in the field of Chapter 11 proceedings. According to its application, two associates spent a total of 350.25 hours on this matter, almost 95% of which represented the work of an associate whose billing rate ran from $100.00 per hour in 1982 to $130.00 in 1985. Paralegals were used only to prepare affidavits of service and the application for a final allowance. The hours worked by paralegals totaled 62.75. For the 413 hours worked by attorneys and paralegals, Hahn & Hesson requests $44,038.75 plus reimbursement of expenses in the amount of $667.07.

Except for the difficulty experienced in retrieving the bankrupt's books from its former accountant, Bernard Klinger, the case was not a difficult or complex one. The estate totals $109,020.68 and there are only 12 general creditors. The trustee was able to collect virtually 100% of the accounts receivable without litigation except in one instance in which he collected $5,413.24. The only other litigated matter was with Bernard Klinger, which resulted in the recovery of a preference in the amount of $1,500.00 and the expunging of an administrative claim in the amount of $5,600.00.

In addition, the trustee was successful in objecting to a number of claims resulting in the reduction in the amount of general

claims from $281,288.74 to $144,717.84, of administration claims from $15,454.50 to $5,445.00 and of priority claims from $12,795.74 to $4,088.00.

The receipts of the estate came from the following sources:

| | |
|---|---|
| Sale of debtor's assets | $39,904.60 |
| Bank accounts | 1,576.00 |
| Refund of life insurance policies | 9,224.84 |
| Refund of deposits | 310.34 |
| Collection of accounts receivable not litigated | 37,032.83 |
| Litigated accounts receivable | 5,314.74 |
| Litigation with Klinger | 1,500.00 |
| Interest | 18,157.33 |

As the foregoing table shows, about $65,000.00 of the estate is from the collection and liquidation of assets involving minimum attorney involvement; $6,814.74 represents the fruits of litigation and about $38,000.00 is due to the collection of accounts receivable. The amount now in the estate is $109,020.68.

As the objecting creditors point out, the allowance of all the fees requested would require in excess of 50 percent of the debtor's estate, leaving less than that percentage for distribution to general creditors. Thus, the size of the estate weighs against the relatively large amounts requested by Hahn & Hessen for the performance of what, for the most part, were relatively routine tasks involving neither difficulty or complexity.

It is appropriate also to consider the benefit to the estate of the work done. In the two litigated cases, the total amount by which the estate was enriched was $6,814.74, apart from the benefit to creditors of eliminating a priority claim. As to the balance of the estate, it consists of monies provided from the liquidation and collection of the debtor's bank accounts, etc. ($47,015.78) and the collection of accounts receivable ($37,032.83).

In the world outside the bankruptcy court, collection work not involving litigation is compensable at some fraction of the amount collected. Results are also relevant in the bankruptcy court. *Copeland v. Marshall*, 641 F.2d 880, 894 (D.C.Cir.1980); *In re Casco Bay Lines*, 25 B.R. 747, 756 (Bankr.App.Panel 1st Cir.1982); *Matter of May Drug . Co., Inc.*, 28 B.R. 923, 928 (Bankr.E.D.N.Y.1983); *Matter of Ferkauf, Inc.*, 42 B.R. 852, 854 (Bankr.S.D.N.Y. 1984). The allowance made should bear some reasonable relationship to the total fruits of the attorneys' efforts, which were about $44,000.00.

This is not to say that the Court does not take cognizance of the fact that the creditors also benefited by the reduction in priority, general claims and from other work done by the attorney for the trustee, but nevertheless, the actual monetary benefit to the estate is relevant in determining how much to award attorneys.

Finally, the Court questions whether the bulk of the work should have been performed, as was the case, by a senior attorney commanding a rate of between $100.00 and $130.00 per hour. Unfortunately, the time sheets submitted are not specific enough to permit the Court to determine what work reasonably required the services of a senior attorney and what could equally have been well done by a paralegal, or a junior attorney.

■ Services which are not of a truly legal nature or which could be performed by a person of less training or skill should not be compensated at the same rate as work requiring the attention of an experienced attorney. "Uncertainties that arise because of poor records should be resolved against the applicant". *State Association for Retarded Children v. Carey*, 544 F.Supp. 330, 338–339 (E.D.N.Y.1982); *In re Daylight Transport, Inc.*, 42 B.R. 20, 23 (Bankr.E.D.N.Y.1984).

■ As to the time spent in preparing the fee application, 60 hours, some compensation is appropriate, but not at the same rate as for demanding legal services. *In re Rego Crescent Corp.*, 37 B.R. 1000, 1008 (Bankr.E.D.N.Y.1984). Furthermore, the time sheets show that some of the 60 hours were due to duplication of work by the two paralegals who assisted in preparing the application.

■ Bearing all the foregoing considerations in mind, the Court has concluded that a fee to Hahn & Hessen of $30,000.00 is reasonable. This figure represents 75 percent of that portion of the estate which is due to the work of the lawyers. When added to the allowance made other professionals, it represents about 45 percent of the entire estate. This seems like more than adequate compensation for a straight-forward relatively simple liquidation proceeding.

While the Code has eliminated the principle of economy in the payment of attorneys, the principle of economy in administration of the estate should survive, that is no more time should be spent than is necessary on routine work, paralegals should be used in place of highly paid professionals when possible and litigation that is more burdensome than beneficial should not be pursued.

Disbursements will be allowed as requested.

### Roberts & Leinwander's Application

■ The accountant indicates that a total of 158 hours were expended on this case at hourly rates ranging from $25.00 to $65.00. In addition, it indicates that it has spent $225.00 on expenses, consisting of transportation and storage. Its application indicates that because of the recalcitrance of Bernard Klinger, the former accountant, who refused to turn over the books and records of the debtor corporation, it was required to reconstruct, in part, some of the debtor's financial records, as well as make court appearances in an effort to retrieve those records. Furthermore, the accountant appeared in court and testified on behalf of the trustee in several other proceedings instituted by the trustee, on the behalf of the estate. The number of hours expended on the case and the hourly rates appear to be reasonable.

Therefore, the accountant will be allowed its compensation and reimbursement as requested.

### The Trustee's Application

Mr. Barr will be allowed the compensation he has requested, $1,970.20.

An Order consistent with this Opinion is being issued contemporaneously.