**In re C & J OIL CO., INC., Debtor.**

**In re JOHNSTON OIL COMPANY, INC., Debtor.**

**In re ROLAND PETROLEUM COMPANY OF MARION, INC., Debtor.**

**Bankruptcy Nos. 7-87-00765 to 7-87-00767.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Oct. 27, 1987.

Howard J. Beck, Jr., Roanoke, Va., for debtors.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

Counsel for the above-captioned debtors in possession, Glenn, Flippin, Feldmann and Darby (herein "Counsel"), has filed an Application for interim compensation requesting allowance of fees in the amount of $35,629.00, together with reimbursement of expenses incurred in the amount of $3,420.81, for a total charge of $39,049.81. The Application for interim compensation also reflects a credit against the total amount of fees charged as a result of prepayment in the amount of $11,128.31 leaving a net balance due pursuant to the interim fee Application of $27,921.50. The issue for determination is the allowability of the fees and expenses pursuant to 11 U.S.C. § 330 and Bankruptcy Rule 2016. Since services rendered affected all three debtors in possession, Counsel has submitted one fee Application and has proposed an allocation of the fee awarded among the three debtors based upon the relative asset value of each entity.

### Facts

The above-captioned cases were filed on May 8, 1987, and, pursuant to proper application by counsel for the debtors in possession filed on May 14, 1987, an Order was entered on May 18, 1987, approving the employment of the applicant herein as attorney for the debtors in possession. In connection with the Application for approval of the employment of the attorney for the debtors in possession, Counsel attached a recitation of its fee agreement with the respective debtors in possession and the individual principally involved in their operations.

Because of the size of the cases and the anticipated length of time that it would take to represent the debtors in possession in achieving a plan of reorganization, Counsel filed on August 26, 1987, an Application to establish a procedure for periodic hearings on applications for interim compensation to be filed during the course of the Chapter 11 proceeding. Upon review of the Application, an Order was entered on September 1, 1987, approving the procedure. All creditors and other parties in interest have received notice of the procedure and of hearing dates established in the Order for hearings on interim applications for compensation. Pursuant to the court's Order dated September 1, 1987, the initial hearing on the first interim fee Application was held in Roanoke, Virginia, on September 22, 1987. Howard J. Beck, Jr., Esquire, lead counsel in the reorganization proceeding, appeared to present the fee Application. No party in interest filed any written objection to the fee Application. Counsel for two creditors did appear at the hearing on the fee Application and raised two concerns. One concern was that other administrative expenses having a priority greater than the priority for payment of Counsel's fees might require refunding of any interim fees allowed at a later time. The other concern raised centered around potential duplicative services of various counsel and paraprofessionals in Counsel's firm in connection with certain conferences held in Christiansburg, Virginia. It appears that at least three such conferences were held. At two of the conferences, Mr. Beck, Mr. Flippin, and Ms. Pinchbeck, a third-year law student, were present. At the other conference, only Mr. Beck and Ms. Pinchbeck were in attendance. These conferences took place on June 3, June 11 and July 8, 1987, with Mr. Flippin being in attendance at the June 3 and July 8 meetings. Both of the concerns expressed by the creditors at the hearing on the fee application will be addressed in this Memorandum Opinion.

The fee Application filed by Counsel is lengthy. It has attached to it exhibits which set forth the services rendered by the firm in diary form showing the individual responsible for the services performed, a description of the services performed, the

date upon which services were performed, and the time spent on services performed in tenths of hours. In many instances, a number of different types of services are "lumped together" in paragraph form. Mr. Beck, at hearing on the fee Application explained that the lumping of description of services occurred in those instances where continuous services over a period of time in a given day were rendered.

The fee Application reveals that there were sixteen (16) persons from Counsel involved in delivery of services. Seven of those individuals are attorneys and their billing rates ranged from $55.00 per hour to $110.00 per hour. At hearing on the fee Application, Mr. Beck revealed that one individual, Casey D. Morana, has been denominated by the firm as a paralegal and was billed at the rate of $45.00 an hour. No explanation was offered either in writing or orally as to Ms. Morana's qualifications as a paraprofessional. Another individual, Ms. Pinchbeck, was identified as a law clerk presently attending law school who is also a C.P.A. and a candidate for a M.B.A. degree. Ms. Pinchbeck's time was billed by the firm at an hourly rate of $45.00 per hour. It was also revealed at the hearing on the fee Application that the firm employed one runner, Ms. Foutz, and charged her time at $20.00 per hour. The other individuals listed as having provided services to the debtors in possession, Ms. Bendel, Ms. Bryant, Ms. Bussey, Ms. Threatt, and Ms. York, were all classified as "legal assistants" by Counsel. However, at the hearing Mr. Beck acknowledged that these individuals performed primarily services to the firm of a legal secretarial nature. All of these individuals were billed at the rate of $45.00 per hour. The total hours billed for this group of "legal assistants" was 38.3 hours. Paralegal time totaling 73.3 hours was requested.

It is clear from the Application that Mr. Beck has been the partner in the firm primarily in charge of the conduct of the reorganization proceeding. His time has been billed at $90.00 per hour. Other attorneys in the firm have provided various support services during the conduct of the case and their hours have been billed at

hourly rates which are, apparently, standard hourly rates charged by this firm in the Roanoke area. This court is familiar with Mr. Beck's background, knowledge, and experience in the area of bankruptcy law. No evidence was offered, however, with respect to the background and qualifications of the other attorneys who provided services to the debtors in possession during the period covered by this interim fee Application which commenced on May 8, 1987, and ended on July 31, 1987.

It also appears from the fee Application that Ms. Pinchbeck, the law clerk, devoted a significant portion of her time to the debtors' cases. In fact, Ms. Pinchbeck was involved in a variety of projects which included some lengthy research on a continuation statement issue and a reclamation issue. While Mr. Beck made the court aware of Ms. Pinchbeck's qualifications as a C.P.A. and a candidate for a M.B.A. degree, he did not offer any evidence as to how these particular qualifications added to the value of the particular services rendered by Ms. Pinchbeck as reflected in the fee Application. Further, the court finds from an examination of the fee Application that Ms. Pinchbeck spent a total of 7.2 hours researching a legal issue involving a continuation statement. With respect to the reclamation issue, Ms. Pinchbeck spent a total of 14.1 hours in legal research and Ms. Gregory, an attorney billed at the rate of $55.00 an hour, spent another 7 hours on the reclamation issue. No explanation was given in the fee Application or at the hearing as to the nature or complexity of either the continuation statement or the reclamation issue. Further, no evidence was offered as to the significance of these issues in the conduct of the reorganization proceeding or the potential rehabilitation of the debtors in possession through a plan of reorganization.

A review of the fee Application indicates that there were three trips made to Christiansburg, Virginia, for conferences involving the debtors and their creditors. On two occasions, two partners in the firm, together with Ms. Pinchbeck, made the trip. On the other occasion, Mr. Beck and

Ms. Pinchbeck made the trip to Christiansburg which is approximately a one hour round trip from the Roanoke, Virginia area. The fee Application reveals that the travel time to and from Christiansburg was charged at the full hourly rates of each of the individuals involved resulting in $245.00 per hour for two of the trips and $135.00 per hour for the third trip. In addition to the foregoing, the fee Application reveals that Ms. Morana made a trip to Harrisonburg on June 22, 1987, involving four hours of travel time at her hourly rate of $45.00 per hour. Finally, Ms. Foutz made a trip on June 22, 1987, involving one and a half hours to an undisclosed location.

With respect to attendance at court hearings, the fee Application reveals that both Ms. Morana and Ms. Pinchbeck attended the creditors' meeting with Mr. Beck on June 12, 1987. No explanation was offered at hearing on the fee Application as to the necessity for the attendance by both individuals.

The fee Application reveals extensive conferences within the firm among partners and associates concerning matters pertaining to the reorganization. However, no explanation has been offered as to the utilization of a particular expertise of any partner or associate in the firm which is of extraordinary value to the debtors or unique to a particular aspect of the case.

These cases are relatively large Chapter 11 reorganization proceedings and counsel has estimated to his client and represented to this court at the fee Application hearing that the total fees in the combined cases could approach $100,000.00. The initial fee Application has surfaced a number of issues concerning the allowability of fees and these issues have been addressed by various bankruptcy courts in other parts of the United States.

### Law

Section 331 of the Bankruptcy Code permits counsel for the debtor in possession to apply for interim compensation at least every 120 days after an order for relief in a case has been entered or more often if the court permits. As indicated above, by Order dated September 1, 1987, this court has approved a procedure which would permit counsel to apply on a monthly basis for allowance of fees. 11 U.S.C. § 330 provides the statutory basis for allowance of compensation of the debtor's attorney. It provides as follows:

> (1) Reasonable compensation for actual, necessary services rendered by such ... attorney, and by any paraprofessional persons employed by such ... attorney, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this Title ...;

11 U.S.C. § 330(a)(1).

Bankruptcy Rule 2016(a) provides that the person seeking interim compensation shall file an application setting forth a detailed statement of the services rendered, time expended and expenses incurred, and the amounts requested. This court finds that the applicant in this proceeding has filed its Application in a manner which complies with Bankruptcy Rule 2016.

In reviewing a fee application pursuant to 11 U.S.C. § 330(a)(1), the bankruptcy courts are guided by the twelve-factor analysis adopted by the Fourth Circuit Court of Appeals in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978), *citing with approval, Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). The *Barber* case has been made applicable to bankruptcy proceedings by *Harman v. Levin*, 772 F.2d 1150, 1152 n. 1 (4th Cir.1985). Since the twelve factors which guide the bankruptcy courts in analyzing fee applications come from the *Johnson* case, *supra*, the factors will be referred to as the "Johnson factors." They are as follows: (1) the time and labor involved, (2) the novelty and difficulty of the questions raised, (3) the skill required to perform properly the legal services rendered, (4) the attorney's opportunity cost in pressing the instant litigation, (5) the customary fee for like work, (6) the attorney's expectations at the outset of the litigation, (7) the time limitations imposed by the client or the circumstances, (8) the amount

in controversy and the results obtained, (9) the experience, reputation, and the ability of the attorney, (10) the undesirability of the case within the legal community in which the suit arose, (11) the nature and length of the professional relationship between attorney and client, and (12) attorney's fees awarded in similar cases. *Johnson*, 488 F.2d at 717–19.

■ Prior to the commencement of an analysis of a fee application in light of the Johnson factors, it should be noted that interim fees can be awarded by the bankruptcy court and that they may be refundable if such a refund is needed in order to prorate administrative expenses of a proceeding. At hearing on the fee Application in this case, some concern was expressed about the allowance of interim fees and the potential for necessity for a refund. However, no evidence was offered that there exists now or might potentially exist administrative expenses of the proceeding having a priority over the payment of counsel fees. Accordingly, no adjustment will be made at this time in the fee Application to take into account the necessity for a potential refund. However, such a potential exists until the conclusion of the case and final allowance of compensation is determined. *In re Wabash Valley Power Ass'n, Inc.*, 69 B.R. 471, 475 (Bankr.S.D. Ind.1987).

■ The burden of proof to justify a fee allowance is on the movant. *In re Harman Supermarket, Inc.*, 44 B.R. 918, 920 (Bankr.W.D.Va.1984). In addition, as indicated by Bankruptcy Rule 2016, it is necessary that counsel keep contemporaneous time records of services rendered which are detailed and reveal the substance necessary for the bankruptcy court to make an informed ruling on whether the services were of value to the administration of the estate and to make an adequate assessment of the reasonableness of the time spent on such services. Mere listing of phone conferences or telephone calls or conferences without more description is not sufficient for compensation. *Wabash*, 69 B.R. at 479. In the case at bar, this court finds that the applicant has set forth in its

fee Application the detail sufficient to meet the requirements of Bankruptcy Rule 2016. However, as will be set forth hereafter, the applicant has failed to carry its burden in some particulars as to the reasonableness of the fee request.

With respect to the Johnson factors, not all of the factors will be applicable or relevant to a particular fee application. The following factors are deemed relevant by this court to this fee Application:

(1) *The time and labor involved.* The fee Application demonstrates that a significant amount of time and labor has been put into this Chapter 11 reorganization proceeding since its inception. The court finds that the time and labor expended by Mr. Beck in delivering services to the debtors in possession and the hourly rate charged for his services are reasonable. With certain exceptions hereinafter noted, Mr. Beck's time and charges will be allowed in full.

■ With respect to the time spent by Ms. Pinchbeck in connection with legal research on the continuation statement issue and the reclamation issue, it appears that an excessive amount of time was spent researching these two issues. No explanation was offered as to the novelty and the difficulty of the questions raised or the necessity for such extensive research. Accordingly, the 14.1 hours spent by Ms. Pinchbeck on the reclamation issue, the 7.2 hours spent by her on the continuation statement issue, and the 7.0 hours spent by Ms. Gregory on the reclamation issue will be disallowed from this interim fee Application with leave to the applicant to provide additional evidence as to the nature, extent and value of these services.

(2) *The novelty and difficulty of questions raised.* No evidence has been offered by the applicant to this point to indicate that any of the questions which have been raised which are the subject of the fee Application are particularly novel or difficult.

(3) *The skill required to perform properly the legal services rendered.* This court finds that the skill required to perform the services for which compensation

is requested are specialized and that Mr. Beck has the expert qualifications to perform these services.

(4) *The attorney's opportunity cost in pressing the instant litigation.* At hearing on the fee Application, Mr. Beck indicated to the court that his firm had not suffered any lost opportunity cost in order to represent the debtors in this case. He did note, however, that he had turned away other work due to the time limitations imposed by his representation of the debtors in these cases.

(5) *The customary fee for like work.* This court finds that the fee request for Mr. Beck's services is customary in the Western District of Virginia and is reasonable. However, the court notes that the hourly rates charged by other partners in Mr. Beck's firm were somewhat higher than the hourly rate charged for his services. No evidence was offered at the hearing on the fee Application to demonstrate the bankruptcy expertise of other partners in the firm which would justify allowance of an hourly rate in excess of that requested by Mr. Beck. Further, no evidence was offered to show that the services provided by other partners charging a higher hourly rate were unique or extraordinary in the context of this Chapter 11 proceeding. Accordingly, this court will reduce the hourly rates charged by partners in the firm in excess of $90.00 an hour to $90.00 per hour with leave to the applicant to provide evidence at further fee Application hearings to support a higher hourly rate.

This court also finds that the applicant has requested a fee allowance for what appears to be largely legal secretarial work or administrative work not directly related to the delivery of legal services which can be compensated under 11 U.S.C. § 330. Clerical or routine services are not compensable as necessary legal services. *Wabash,* 69 B.R. at 478. To a greater extent, not all time expended by counsel is necessarily compensable at the normal hourly rate charged for legal services. For example, in this particular fee Application, counsel has charged travel time at the full hourly rate for both partners, associates, law clerks, and secretaries. This court is of the opinion that travel time of the applicant should not be allowed at the full hourly rate charged unless there is a substantial reason justifying the full charge. No such showing has been made in connection with this fee Application. On the other hand, the applicant should be entitled to charge for some percentage of the normal hourly rate for delivery of legal services for necessary travel. This court finds that 75% of the allowed hourly rate for necessary travel should be permitted. As set forth in the fact situation, Mr. Beck and Ms. Pinchbeck have made three trips to Christiansburg for meetings with the debtors and various lending institutions. The fee Application itself and, as supplemented by Mr. Beck's presentation at the fee Application hearing, indicates the necessity for his travel to Christiansburg and the need for assistance of Ms. Pinchbeck who appears to have provided a significant amount of support in the reorganization proceeding through July 1, 1987. Accordingly, 75% of the allowed hourly rate for Mr. Beck and Ms. Pinchbeck will be allowed for each of the three trips to Christiansburg. However, there does not appear to have been an adequate explanation as to the necessity for Mr. Flippin's attendance at the two meetings in Christiansburg. Accordingly, the time shown on the fee Application for Mr. Flippin's participation in the Christiansburg meetings will be disallowed as to this interim fee Application; however, the applicant will be permitted to offer further evidence of the necessity of Mr. Flippin's participation.

With respect to the secretarial time charged in the fee Application, this court finds that a total of 38.3 hours of secretarial time and messenger service was expended which is not compensable under 11 U.S. C. § 330. *Id.,* at 479. This time will be disallowed at the rate of $45.00 an hour. In addition, this court finds that 41.5 hours of paralegal time constituted, in reality, either legal secretarial work or messenger service and this time will be disallowed at the rate of $45.00 per hour.

The court must also concern itself with the time spent in preparing the fee Application. The time spent in preparing fee applications is not time which is of the same value to the debtor or its estate as time spent in actually delivering legal services. On the other hand, the necessity for keeping detailed time records and for preparing a proper fee application is imposed by the Bankruptcy Code in order to permit the bankruptcy court to correctly ascertain the amount to be awarded. *In re Jones,* 13 B.R. 192, 194 (Bankr.E.D.Va. 1981). This court finds that 75% of the allowed hourly rate for the individual preparing the fee Application is allowable.

With respect to travel, this court also finds that expenses of travel for mileage and parking are also allowable as reimbursable expenses. Mileage is reimbursable at the existing rate for government employees. Since mileage has been applied for in this case in a lump sum without indication of the amount charged per mile or a breakdown of the trips involved, that portion of the request for reimbursement of expenses will be disallowed from this interim fee Application with leave to the applicant to provide the data necessary to support allowance. The same is true for the request for reimbursement of postage expenses.

(6) *The attorney's expectations at the outset of the litigation..* This factor is not relevant in this fee Application.

(7) *The time limitations imposed by the client or the circumstances.* This matter has been adequately addressed above.

(8) *The amount in controversy and the results obtained.* This factor is not relevant to the fee Application herein.

(9) *The experience, reputation, and ability of the attorney.* With respect to Mr. Beck's qualifications, this matter has already been addressed.

(10) *The undesirability of the case within the legal community in which the suit arose.* This factor is not relevant to this fee Application.

(11) *The nature and length of the professional relationship between attorney and client.* No direct evidence was offered by the applicant with respect to this issue. However, it appears that the client came to the firm for specialized services.

(12) *Attorney's fees awards in similar cases.* The applicant offered no evidence to compare the fees requested in the interim Application to fees awarded in other cases.

Based upon the Johnson factors analyzed above and the additional case law which amplifies the Johnson factors, it is the court's opinion that the following adjustments should be made to the interim fee Application:

| | | |
|---|---:|---:|
| Total fee request: | | $35629.00 |
| Less: | | |
| Secretarial time and messenger time (38.3 × $45) | $1723.50 | |
| Paralegal time (41.5 × $45) | 1867.50 | |
| Research time | | |
| Reclamation issue: | | |
| KAP (14.1 × $45) | 634.50 | |
| JLG (7.0 × $55) | 385.00 | |
| Continuation statement: | | |
| KAP (7.2 × $45) | 324.00 | |
| Travel time (.25 × $625) | 156.25 | |
| Reduction of hourly rate to $90 per hr. for partners Flippin, Darby & Feldman | 1597.00 | |
| Reduction for Flippin time at Christiansburg meetings | 896.00 | |
| Fee application preparation (.25 × $405) | 101.25 | |
| Total | | 7685.00 |
| Fee Allowed | | $27944.00 |
| Expenses Requested | | $3420.81 |
| Less: | | |
| Photocopies | $1048.85 | |
| Mileage | 316.05 | [1364.90] |
| Expenses allowed | | 2055.91 |
| Total allowed this application | | $29999.91 |
| Less: Fee previously paid | | 11128.31 |
| Net payable | | $18871.60 |

Accordingly, the interim fee Application is reduced by $9,049.90. An appropriate order will enter.