**In re JUNCO, INC., Debtor.**

**In re PRESS, JONES & WAECHTER, P.C., Debtor.**

**In re SPRINGFIELD CONTRACTING CORPORATION, Debtor.**

Bankruptcy Nos. 93–34079–S, 93–33459–S and 89–02057–RS.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

May 24, 1995.

---

1. It is undisputed that the debts between Driggs and the IRS were mutual.

Kevin R. Huennekens, Maloney, Yeatts & Barr, Richmond, VA, Chapter 7 Trustee in No. 93–34079–S.

B.W. Davenport, Jr., Mays & Valentine, Richmond, VA, for creditors in No. 93–33459–S.

Keith L. Phillips, Phillips, Webb & Wallerstein, P.C., Richmond, VA, Chapter 7 Trustee in No. 93–33459–S.

Kevin R. Huennekens, Maloney, Yeatts & Barr, Richmond, VA, Chapter 11 Trustee in No. 89–02057–RS.

William H. Schwarzschild, III, Williams, Mullen, Christian & Dobbins, Richmond, VA, for trustee in No. 89–02057–RS.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

These matters come before the Court upon applications seeking compensation for fees and expenses pursuant to 11 U.S.C. § 330. Each application was filed by Barry Strickland & Company, C.P.A. ("Strickland"), as the accountant for the Trustee, Kevin R. Huennekens. These are core proceedings over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334. This Court has raised, *sua sponte,* the issue of whether certain fees charged for the preparation of the accountant's application for compensation are proper. Upon consideration of the record, evidence, and arguments presented at hearings on November 22, 1994, this Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Strickland was hired by the Trustee, pursuant to 11 U.S.C. § 327, to provide general accounting services for each of the three bankruptcy estates. Strickland has prepared detailed applications for compensation, pursuant to 11 U.S.C. § 330, in which he has charged the estate for the time his firm spent drafting, reviewing, and signing the applications for compensation, as well as time spent preparing for and attending the hearings on the applications. The charges for these activities in the *Junco* matter constitute approximately 12% of the total fees charged in the application. In the *Press, Jones & Waechter* matter, the charges represent approximately 11% of the total, and in *Springfield Contracting,* the figure is nearly 20%. The following chart summarizes the portion of each of Strickland's fee applications that relate to his preparation and presentation of the fee application itself:

### IN RE JUNCO, INC.

| INDIVIDUAL | HOURS | RATE | TOTAL |
|---|---|---|---|
| Draft of Application for Compensation | | | |
| JOF | 1.50 | $75 | $112.50 |
| JOF | 0.58 | $75 | $ 43.50 |
| | | | |
| Complete Application, Review, and Sign | | | |
| BIS | 0.17 | $90 | $ 15.30 |
| JOF | 0.25 | $75 | $ 18.75 |
| CAM | 0.50 | $40 | $ 20.00 |
| GPS | 1.75 | $29 | $ 50.75 |
| | | | |
| Prepare Order for Court, prepare for, travel to, and attend hearing on Application for Compensation | | | |
| BIS | 1.25 | $90 | $112.50 |
| CAM | 0.25 | $40 | $ 10.00 |
| | | | |
| **TOTAL** | **6.25** | | **$383.30** |

#### SUMMARY

| | |
|---|---|
| Total Hours: | 58.09 |
| **Preparation Hours:** | **6.25 (10.75%)** |
| | |
| Total Fees: | $3,200.31 |
| **Preparation Fees:** | **$383.30 (11.98%)** |

### IN RE PRESS, JONES & WAECHTER, P.C.

| INDIVIDUAL | HOURS | RATE | TOTAL |
|---|---|---|---|
| Draft Application for Compensation | | | |
| BLW | 1.84 | $75 | $138.00 |
| GPS | 1.00 | $29 | $ 29.00 |
| GPS | 1.00 | $29 | $ 29.00 |
| BLW | 0.50 | $75 | $ 37.50 |
| GPS | 1.17 | $29 | $ 33.93 |
| BLW | 0.25 | $75 | $ 18.75 |
| GPS | 0.50 | $29 | $ 14.50 |
| TAV | 0.08 | $34 | $ 2.72 |
| | | | |
| Finalize, Review and Sign Application for Compensation | | | |
| BIS | 0.25 | $90 | $ 22.50 |
| BLW | 0.75 | $75 | $ 56.25 |
| GPS | 1.50 | $29 | $ 43.50 |
| | | | |
| Prepare and send Notices to Creditors of Application and Hearing | | | |
| CAM | 2.00 | $40 | $ 80.00 |
| TAV | 0.08 | $34 | $ 2.72 |
| | | | |
| Draft order approving compensation | | | |
| CAM | 0.25 | $40 | $ 10.00 |
| | | | |
| Prepare for and attend hearing on Application for Compensation | | | |
| BIS | 0.75 | $90 | $ 67.50 |
| BLW | 0.25 | $75 | $ 18.75 |
| | | | |
| **TOTAL** | **12.17** | | **$604.62** |

#### SUMMARY

| | |
|---|---|
| Total Hours: | 83.40 |
| **Preparation Hours:** | **12.17 (14.59%)** |
| | |
| Total Fees: | $5,403.35 |
| **Preparation Fees:** | **$604.62 (11.19%)** |

## IN RE SPRINGFIELD CONTRACTING CORPORATION

| INDIVIDUAL | HOURS | RATE | TOTAL |
|---|---|---|---|
| Draft Application for Compensation | | | |
| BLW | 2.92 | $75 | $219.00 |
| BLW | 1.00 | $75 | $ 75.00 |
| CAM | 1.25 | $40 | $ 50.00 |
| Finalize, Review and Sign Application for Compensation | | | |
| BIS | 0.25 | $90 | $ 22.50 |
| BLW | 0.75 | $75 | $ 56.25 |
| CAM | 0.50 | $40 | $ 20.00 |
| TAV | 0.25 | $34 | $ 8.50 |
| Draft order approving compensation | | | |
| CAM | 0.25 | $40 | $ 10.00 |
| Prepare for and attend hearing on Application for Compensation | | | |
| BIS | 0.75 | $90 | $ 67.50 |
| BLW | 0.25 | $75 | $ 18.75 |
| **TOTAL** | 8.17 | | $547.60 |

### SUMMARY

| | |
|---|---|
| Total Hours: | 37.84 |
| **Preparation Hours:** | 8.17 (21.59%) |
| Total Fees Requested: | $2,790.38 |
| **Preparation Fees:** | $547.50 (19.62%) |

### CONCLUSIONS OF LAW

Section 327 of the Bankruptcy Code ("the Code") permits the Trustee for a bankruptcy estate, with the court's approval, to employ: one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the Trustee in carrying out the Trustee's duties under this title.

11 U.S.C.A. § 327(a) (West 1993). Additionally, § 330 of the Code permits the bankruptcy court to award a professional person: reasonable compensation for actual, necessary services rendered by such Trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such Trustee,

professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title.

11 U.S.C.A. § 330(a)(1) (West 1993) [1].

It has long been the requirement that a professional who wishes to be compensated from the estate in a bankruptcy proceeding must provide a detailed account of the services that have been provided to the estate. *See* 11 U.S.C. § 329(a); F.R.Bankr.P. 2016. A detailed fee application enables the bankruptcy court to fulfill its duty to review and examine the compensation sought by the professional. *In re Nucorp,* 764 F.2d 655, 658 (9th Cir.1985). The "lodestar" analysis adopted by this Court in *In re Great Sweats, Inc.,* 113 B.R. 240 (Bankr.E.D.Va.1990) (on remand from *In re Great Sweats of Virginia,* 109 B.R. 696 (E.D.Va.1989)), is the method used to determine the amount of a professional's reasonable compensation from the bankrupt estate. This analysis involves a two-step process in which a professional's reasonable number of hours is first multiplied by a reasonable hourly wage to produce a lodestar figure which then may be adjusted up or down by utilizing several factors. While the law in this jurisdiction is clear on the analysis to be employed for compensable time, the Eastern District of Virginia has not directly addressed the threshold issue of whether or not time devoted to the preparation and presentation of an accountant's fee application is compensable time so as to be included in the lodestar analysis.

Because § 330 of the Code only authorizes compensation for "actual, necessary services," the issue before this Court is whether the time spent by a professional person in preparing and presenting a fee application for this Court is "actual and necessary" to the administration of the bankrupt estate.[2] In resolving this question, Strick-

---

**1.** The Court notes that 11 U.S.C. § 330 has been amended by the Bankruptcy Reform Act of 1994. The Code section is cited here in its former version, as the amendments to § 330 only apply to those cases filed after October 22, 1994. Bankruptcy Reform Act of 1994 § 702, Pub.L. No. 103–394, 108 Stat. 4106 (1994).

**2.** This determination is well within this Court's discretion. *Anderson v. Morris,* 658 F.2d 246, 249 (4th Cir.1981) ("The judge must determine, for example, what hours may reasonably be included [in the time-rate calculation].").

land, as the applicant seeking an award of compensation, bears the burden of establishing that the request is reasonable. *See, e.g., Matter of Evangeline Refining Co.,* 890 F.2d 1312, 1326 (5th Cir.1989); *In re Harman Supermarket, Inc.,* 44 B.R. 918, 920 (Bankr. W.D.Va.1984).

Several recent court decisions reflect judicial division over the issue of whether attorneys and other professionals may be compensated for time devoted to the preparation and presentation of fee applications. A developing line of cases indicates a growing trend among some bankruptcy courts to award compensation to professionals for time devoted to the preparation and presentation of fee applications pursuant to § 330 of the Bankruptcy Code. *See In re Nucorp Energy, Inc.,* 764 F.2d 655, 659 n. 4. These courts regard the application requirement as an "actual, necessary service" meriting compensation and therefore permit the time spent in preparing and presenting fee application to be compensable.[3]

In the *Nucorp* case, the Ninth Circuit held that "bankruptcy counsel are entitled to compensation for the time and effort spent in preparing fee applications." 764 F.2d at 662. The court reasoned that the statutory fee award provisions of the Bankruptcy Act were designed to ensure that attorneys are fully compensated for handling a case. *Id.* Were a court not to allow an attorney to be compensated for the time spent preparing the application, it would "in effect, be reducing the fees that bankruptcy counsel may earn to a level that fails to provide full compensation for their services." *Id.* The court also noted that "[b]ankruptcy counsel devote substantially more time and effort to the preparation of fee applications than do attorneys who receive compensation for comparable services." *Id.*

The Bankruptcy Court for the Eastern District of Virginia has indirectly addressed this issue in two reported cases. In *In re Nova Real Estate Investment Trust,* 25 B.R. 252 (Bankr.E.D.Va.1982), Chief Judge Bostetter stated in *dicta* that "[t]here can be no

compensation allowed for duplication of the time between counsel, unnecessary time expended, *or for preparation or review of the application for compensation."* *Nova,* 25 B.R. at 254 (emphasis added). Later, in *In re United Rockwool, Inc.,* 32 B.R. 558 (Bankr.E.D.Va.1983), this Court considered a fee application that included eight hours of charges, at an attorney's full rate, for the preparation of the fee application for $108,092.72. In *Rockwool,* this Court stated:

> Preparation of an application for compensation is more in the nature of a cost of doing business rather than a service rendered *for the debtor.* Although some courts have permitted some compensation for such preparation, the amount must be reasonable and due to the nature of the work, if billable at all, should be done largely by paralegals or assistants rather than attorneys.

*Rockwool,* 32 B.R. at 562 (emphasis in original). Despite the "numerous problems" with the attorney's application, this Court in *Rockwool* nevertheless awarded the amount requested on the basis that "[t]he major criterion for compensation is and must be the value of the services to the client." *Id.* The Court reasoned that since the Chapter 11 client was satisfied with the results obtained and that the estate was enhanced by the applicant's efforts, the total fee request was reasonable.

 The Western District of Virginia, on the other hand, has expressly adopted a 25% reduction in rate approach to the issue of fee application preparation. *In re C & J Oil Co., Inc.,* 81 B.R. 398, 405 (Bankr.W.D.Va.1987). In adopting that rule, the court reasoned:

> The time spent in preparing fee applications is not time which is of the same value to the debtor or its estate as time spent in actually delivering legal services. On the other hand, the necessity for keeping detailed time records and for preparing a proper fee application is imposed by the

---

**3.** *See, e.g., In re Braswell Motor Freight Lines, Inc.,* 630 F.2d 348, 351 (5th Cir.1980); *Rose Pass Mines, Inc. v. Howard,* 615 F.2d 1088, 1093 (5th Cir.1980); *In re C.P. Del Caribe, Inc.,* 143 B.R. 11 (Bankr.D.P.R.1992) (allowing compensation for additional burden imposed by Code); *In re TS*

*Industries, Inc.,* 125 B.R. 638 (Bankr.D.Utah 1991) (allowing compensation only if not excessive or duplicative); *In re Seneca Oil Co.,* 65 B.R. 902 (Bankr.W.D.Okla.1986) (allowing compensation where time was spent on the additional burden required by the Code).

Bankruptcy Code in order to permit the bankruptcy court to correctly ascertain the amount to be awarded. *This court finds that 75% of the allowed hourly rate for the individual preparing the fee Application is allowable.*

*Id.* (emphasis added) (citations omitted).[4]

Many other courts to have struggled with this issue have adopted a "percentage of total approach" to compensation for preparation of fee applications.[5] These courts reason that "when an experienced professional does a clerk's work, he should be paid a clerk's wages." *In re The Vogue,* 92 B.R. 717, 718 (Bankr.E.D.Mich.1988); *see also In re United Rockwool, Inc.,* 32 B.R. 558, 561 (Some consideration should be given to a lower fee when duties involve ministerial acts or travel as distinguished from pure legal services.).

This Court finds persuasive, however, the reasoning of many other courts that have refused to award compensation for preparation of fee applications in all but extraordinary circumstances.[6] The reason a highly-compensated professional is highly compensated is because he or she has the skills necessary to accomplish difficult tasks, and the market will pay for those skills when they are in demand. Keeping track of and recording one's activities is not the type of activity that requires the skill and expertise of a highly-trained lawyer or accountant.

Strickland concedes that he does not normally charge his clients for the time he spends preparing a billing statement. It is equally likely that Strickland does not charge his clients for the time he may spend explaining, negotiating, and haggling over his bill— the practical equivalent of appearing in court on a fee application. Moreover, if one of Strickland's clients refused to pay a bill and

---

4. A wealth of case law indicates that under § 330 compensation for various services does not have to be at an uniform rate. As this Court stated in *In re Jones,* 13 B.R. 192 (Bankr.E.D.Va.1981), "[C]ompensation for travel time, negotiations, preparation of legal documents and actual travel time need not be at the same hourly rate." *Id.,* at 194. *See, e.g., In re Bicoastal Corp.,* 121 B.R. 653 (Bankr.M.D.Fla.1990); *In re Kaiser Steel Corp.,* 74 B.R. 885 (Bankr.D.Colo.1987) (allowing compensation at 50% of normal billing rate schedule); *In re Wabash Valley Power Ass'n, Inc.,* 69 B.R. 471, 478 (Bankr.S.D.Ind.1987); *In re Neibart Associates Press, Inc.,* 58 B.R. 212, 215 (Bankr.E.D.N.Y.1985); *In re Jensen–Farley Pictures, Inc.,* 47 B.R. 557, 585 (Bankr.D.Utah 1985).

5. Some bankruptcy courts that have considered this issue have limited compensation to a percentage of the total amount requested in the fee application. Illustrative of this approach is *In re Heck's Inc.,* 112 B.R. 775 (Bankr.S.D.W.Va. 1990), where the court allowed "each professional employed in the case compensation for time spent in preparation and review of fee applications to the extent such compensation did not exceed 3% of the total fees allowed to each professional." *Id.* at 793. *In re Pettibone Corp.,* 74 B.R. 293, 304 (Bankr.N.D.Ill.1987) (allowing 3% in the absence of unusual circumstances) and *In re Wildman,* 72 B.R. 700, 710–11 (Bankr. N.D.Ill.1987). Other courts adopting this "percentage of total" approach often cite the Sixth Circuit case, *Coulter v. State of Tenn.,* 805 F.2d 146, 151 (6th Cir.1986), which established a 5% limitation in a civil rights cases. *See, e.g., In re By–Rite Oil Co.,* 87 B.R. 905, 917 (Bankr. E.D.Mich.1988).

6. *See, e.g., In re Ross,* 135 B.R. 230 (Bankr. E.D.Pa.1991); *In re K & R Mining, Inc.,* 105 B.R. 394 (Bankr.N.D.Ohio 1989) (considering charges as "cost of doing business"); *In re Kroh Bros. Development Co.,* 105 B.R. 515 (Bankr.W.D.Mo. 1989); *In re The Vogue,* 92 B.R. 717 (Bankr. E.D.Mich.1988); *In re Temp–Way Corp.,* 80 B.R. 699, 706 (Bankr.E.D.Pa.1987); *In re Jessee,* 77 B.R. 59, 61 (Bankr.W.D.Va.1987) (denying compensation for services rendered by counsel in defending a previously allowed fee application); *In re Alan I.W. Frank Corp.,* 71 B.R. 585, 586 (Bankr.E.D.Pa.1987); *In re Shaffer–Gordon Associates, Inc.,* 68 B.R. 344 (Bankr.E.D.Pa.1986); *In re Bonds Lucky Foods, Inc., No. 1,* 76 B.R. 664, 670 (Bankr.E.D.Ark.1986); *In re Mansfield Tire & Rubber Co.,* 65 B.R. 446 (Bankr.N.D.Ohio 1986); *In re Holthoff,* 55 B.R. 36, 42 (Bankr. E.D.Ark.1985); *In re American Metals Corp.,* 49 B.R. 579 (Bankr.D.Kan.1985); *In re Wilson Foods Corp.,* 36 B.R. 317 (Bankr.W.D.Okla. 1984); *Matter of Liberal Market, Inc.,* 24 B.R. 653, 661 (Bankr.S.D.Ohio 1982); *Matter of Seatrain Lines, Inc.,* 21 B.R. 194 (Bankr.S.D.N.Y. 1982). *See also* 2 *Collier on Bankruptcy,* ¶ 330.05[2][b], n. 20a (not a service to the estate), n. 20b (encourages requests for excessive fees), n. 20c (mere overhead of law firm).

Some courts have noted that compensation is generally inappropriate but may be awarded in extraordinary circumstances. *See, e.g., In re Four Star Terminals, Inc.,* 42 B.R. 419, 436 (Bankr.D.Alaska 1984) (allowing compensation if objection if "frivolous"); *In re Wiedau's, Inc.,* 78 B.R. 904, 909 (Bankr.S.D.Ill.1987) (denying compensation absent "unusual circumstances"); *In re Beck–Rumbaugh Associates, Inc.,* 68 B.R. 882, 889 (Bankr.E.D.Pa.1987).

the matter ended up in litigation, Strickland would not be able to assess its time spent during the litigation as damages.[7] At least one court has stated the rule well in holding that fees charged for defending a challenge to a fee application are not compensable:

> This Court is of the view that, at bottom, the efforts of counsel or any other professional to obtain payment for work performed is largely a cost of doing business, incorporated, one is compelled to believe, in the hourly rates charged. Surely, when a private client objects, or raises questions about a statement from counsel, that client does not receive a further bill for having protested!

*In re The Gibbons–Grable Co.*, 151 B.R. 814, 817 (Bankr.N.D.Ohio 1992).

Strickland argues that while he does not normally charge a client for the time spent preparing a billing statement, his work for the bankruptcy Trustee requires him to prepare bills with much more particularity than usual. Moreover, if he does not comply with the requirements of the Code he will not be compensated. Therefore, Strickland contends that he should be compensated for the time he spends preparing the application.

The thrust of Strickland's argument is that there is something inherently different in working for a bankruptcy client that makes the process of obtaining one's fees materially more onerous than work outside of the bankruptcy context. Indeed, many courts have accepted this argument and have allowed compensation on the assumption that bankruptcy fee applications are more detailed than a non-bankruptcy bill. However, that assumption is based upon

> quaint notions that clients still accept and pay bills stating no more than 'For Services Rendered ... pay $x' Those days are long gone. Commercial clients, such as banks, insurance companies, and industrial corporations, and even savvy or assertive consumer clients require itemization, which ... is not much less detailed than that which is required by bankruptcy courts. At one time or another [these clients] want and get justification for each lawyer's

hourly rate and an itemization of time spent and expenses incurred.

*The Vogue,* 92 B.R. at 723.

To the extent that the Code does, in fact, impose an additional burden on a professional, it is not clear that this additional time is compensable under the Code. Recognizing that the preparation of the application does not directly benefit the estate, most courts have justified their allowing compensation on the grounds that it is *unfair* to place extra requirements on professionals and not compensate them for the time they spend meeting these requirements. For example, in *Nucorp,* the Ninth Circuit stated that "it is fundamentally inequitable to impose substantial requirements on bankruptcy counsel as prerequisites to their obtaining compensation while simultaneously denying compensation for the efforts necessary to comply with those requirements." *Nucorp,* 764 F.2d at 659.

This argument misses the mark. Even if it is the case that the requirements are somehow inequitable, this consideration is irrelevant. The plain language of § 330 states that the standard for allowing compensation is "the cost of comparable services other than in a case under this title." 11 U.S.C.A. § 330 (West 1993). The marketplace sets the compensation for professionals outside of the bankruptcy court. The task of this Court, then, is to analyze fee applications in light of what is comparable in the marketplace. As fairness is not necessarily a force within the marketplace, fairness is outside the scope of the Court's analysis regarding the level of compensation within the bankruptcy context. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (equitable powers that remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.); *Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.), *cert. denied* 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988) (courts may be innovative and original in applying the Bankruptcy Code, but equitable powers

---

**7.** This, of course, is because the "American Rule" precludes this. *See Alyeska Pipeline Service Co., v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

are nonetheless limited by the confines of the Code). In this regard, the proper inquiry is: "*Do* professionals receive compensation in non-bankruptcy cases for preparing their fees?" and not "*Is it fair* to require professionals to prepare fee applications and then not pay them?" The answer to the first question, by Strickland's own admission, is no.

Strickland could have also argued that this Court's holding in the *In re Rockwool* case dictates that he be awarded compensation. *Rockwool* should not be read to say that, as a rule, time spent preparing a fee application is compensable. In addition, to the extent that one would read *Rockwool* to stand for the proposition that time spent preparing fee applications is compensable, that case is easily distinguished from the matters currently before the Court. In *Rockwool*, this Court stated that time spent in preparation of fee applications is a cost of doing business, but nonetheless allowed eight hours of compensation for preparation of a fee request of $108,-092.72 plus expenses of $3,511.71. In contrast, in one of the current applications, Strickland seeks compensation of $547.50 for 8.17 hours of preparation time in an application request totaling merely $2,790.38. Clearly, Strickland's charges for preparation and presentation of the fee applications now before the Court constitute a significantly greater portion of the total bill than the charges in *Rockwool*.

The time spent preparing and presenting a fee application does not convey a meaningful benefit to the estate. *In re Melp*, 179 B.R. 636 (Bankr.E.D.Mo.1995). There is no evidence that Strickland overcharged the estate or that his fees are excessive. In fact, his services appear to be exemplary, and the Trustee was satisfied with the results obtained and has not objected to the fee request. It is probably fair to say that the overall estate was enhanced by Strickland's overall efforts. The focus should not be upon whether there was any wrongdoing, but rather whether the portion of the application related to preparing, reviewing, and presenting the fee application was of any benefit to the estate. While it is true that a professional must prepare a detailed fee application in

order to be paid, in doing so, the professional is protecting personal interests and is not performing a service of which the estate is a beneficiary. *See, e.g., In re Rockwool,* 32 B.R. at 561; *In re Jessee,* 77 B.R. 59, 61 (Bankr.W.D.Va.1987) (Krumm, J.). "Fees incurred for preparing and pursuing fee applications are too closely tied to the applicant's self-interest and too attenuated from benefit to the estate to merit compensation." *In re Jefsaba, Inc.,* 172 B.R. 786, 802 (Bankr. E.D.Pa.1994). For this reason, the professional must absorb the time spent preparing the fee application as a cost of doing business. *See, e.g., Rockwool,* 32 B.R. at 561; *K & R Mining,* 105 B.R. at 398.

Finally, this Court notes that professionals who are considering working in the bankruptcy context are or should be aware of the fee application requirements and should consider them in their decision whether to accept the employment. *In re Jefsaba,* 172 B.R. at 802. The *Jefsaba* court stated the proposition well:

> [G]iven the expanded billing specifications which are demanded in today's competitive private legal market for which private clients are not charged, it would be anomalous to impose the cost of billing on a debtor estate when non-financially distressed clients are not paying for a substantially similar service ... [P]rofessionals are or should be aware of the fee application requirements and should consider them in their decision whether to accept the employment.

*Id.* As a cost of doing business, non-compensable time that will be required for preparing fee applications, no matter how burdensome, should be taken into consideration by the professional. In addition, the current availability of computerized billing aids makes the task of keeping detailed records of one's time a less burdensome activity. *Id.*

■ This Court holds that the time spent preparing and presenting a professional's fee application is a cost of doing business rather than a compensable service rendered for the debtor. For the reasons stated herein, this Court will deny compensation for Strickland's charges that relate to time spent preparing and presenting applications for com-

pensation. An Order conforming with this Memorandum Opinion will be entered by the Court in each of these matters.